Filed 3/2/16  Zhang v. Amgen, Inc. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| TIE ZHANG,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>AMGEN, INC.,<br><br>    Defendant and Respondent. | 2d Civil No. B261294<br>(Super. Ct. No. 56-2012-00420162<br>CU-OE-VTA)<br>(Ventura County) |

Tie Zhang appeals from an order denying his motion for certification of a class of Senior Associate Scientists employed by Amgen, Inc., respondent.[1]  Appellant's theory of recovery is that Senior Associate Scientists are nonexempt employees, but respondent misclassified them as exempt under the learned professions exemption.  The trial court denied certification because respondent's "liability will turn upon an individualized analysis" of that exemption.

Appellant asserts, "[T]he learned professions exemption is the linchpin of this case."  He argues that an individualized analysis of the exemption is unnecessary because Senior Associate Scientists do not meet the following requirement of the exemption: they

---

[1] "[A]n order denying a motion to certify all class claims leaving only the named plaintiff's individual claims in the trial court is an appealable order under the ' "death knell" ' doctrine.  [Citations.]"  (*Munoz v. Chipotle Mexican Grill, Inc.* (2015) 238 Cal.App.4th 291, 308.)

must be primarily engaged in "[w]ork requiring knowledge of an advanced type . . . customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship . . . ." (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(3)(b)(i).) We affirm.

*Factual and Procedural Background*

Appellant was employed by respondent as a Senior Associate Scientist. In December 2011 his employment was terminated. In June 2012 appellant filed a complaint consisting of nine causes of action. Six were class action claims brought on behalf of appellant and similarly situated Senior Associate Scientists. In the class action claims, appellant alleged violations of state regulations governing overtime wages as well as meal and rest breaks. Appellant asserted that respondent had misclassified Senior Associate Scientists as exempt employees not entitled to overtime wages or rest and meal breaks.

Appellant moved for certification of a class of 42 Senior Associate Scientists. Appellant defined the class as consisting of "all Senior Associate Scientists who worked in California for [respondent] during the period of June 29, 2008 to the present, who have neither executed an arbitration agreement regarding the claims asserted in this action, nor have executed a release regarding the claims asserted in this action."

The trial court rendered its decision in a minute order stating: "Class certification is denied on the ground that [appellant] has failed to meet his burden of establishing the requisite elements for class certification. While some common issues [among class members] exist, common issues of fact and law do not predominate and there is not a well-defined community of interest. [Appellant's] theory of recovery requires that Senior Associate Scientists be found non-exempt [from wage and hour laws]. . . . [L]iability will turn upon an individualized analysis of the 'learned profession[s]' exemption. Individualized issues predominate because of the variance of [Senior Associate Scientists'] job duties and their individual educational background and experience. There is no comprehensive common proof identified that would make [appellant's] theory of recovery amenable to class treatment."

2

*The Learned Professions Exemption*

California's Industrial Welfare Commission (IWC) has promulgated regulations governing the wages, hours, and other working conditions of employees. Wage Order 4-2001 appears in California Code of Regulations, title 8, section 11040 (hereafter section 11040). This wage order establishes an exemption from wage and hour regulations for employees "primarily engaged in an occupation commonly recognized as a learned . . . profession." (§ 11040, subd. 1(A)(3)(b).) "The IWC's wage orders are to be accorded the same dignity as statutes." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1027.)

The learned professions exemption is an affirmative defense, " 'and therefore the employer bears the burden of proving the employee's exemption.' [Citations.]" (*Sav-on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 338.) To qualify for the learned professions exemption, an employee must be "primarily engaged in the performance of . . . [w]ork requiring knowledge of an advanced type . . . customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship . . . ." (§ 11040, subd. 1(A)(3)(b)(i).)

Wage Order 4-2001 provides that the learned professions exemption "is intended to be construed in accordance with" 29 Code of Federal Regulations (C.F.R.), part 541.301(a)-(d), as it "existed as of the date of this wage order." (§ 11040, subd. 1(A)(3)(e).) Wage Order 4-2001 became effective on January 1, 2001. (See *Harris v. Superior Court* (2011) 53 Cal.4th 170, 177, fn. 1.) At that time, 29 C.F.R. part 541.301 provided that the knowledge requirement of the learned professions exemption consists of three elements. "The first element . . . is that the knowledge be of an advanced type. Thus, generally speaking, it must be knowledge which cannot be attained at the high school level." (*Id*., subd. (b).) "Second it must be knowledge in a field of science or learning." (*Id*., subd. (c).) Third, "[t]he requisite knowledge . . . must be customarily acquired by a prolonged course of specialized intellectual instruction and study. . . . *The word 'customarily' implies that in the vast majority of cases the specific*

3

*academic training is a prerequisite for entrance into the profession.* It makes the exemption available to the occasional lawyer who has not gone to law school, or the occasional chemist who is not the possessor of a degree in chemistry, etc., but it does not include the members of such quasi-professions as journalism in which the bulk of the employees have acquired their skill by experience rather than by any formal specialized training." (*Id.*, subd. (d), italics added.)

Contrary to 29 C.F.R. part 541.301(d) as it existed as of the date of Wage Order 4-2001, current 29 C.F.R. part 541.301(d) provides, "The phrase 'customarily acquired by a prolonged course of specialized intellectual instruction' restricts the exemption to professions where specialized academic training is a *standard prerequisite* for entrance into the profession." (Italics added.) The "standard prerequisite" language was added by a 2004 revision. (See http://www.dol.gov/whd/overtime/regulations_final.htm.) We disregard this language because Wage Order 4-2001 states that it should be construed in accordance with 29 C.F.R. part 541.301(d) as it "existed as of the date of this wage order." (§ 11040, subd. 1(A)(3)(e).) At that time, 29 C.F.R. part 541.301(d) did not contain the "standard prerequisite" language.

The IWC's "Statement as to the Basis" for wage order 4-2001 confirms that current 29 C.F.R. part 541.301(d) should not be relied upon to construe the wage order. "With respect to Wage Order 4-2001, the Commission Statement notes, 'The IWC intends the regulations in these wage orders to provide clarity regarding the federal regulations that can be used [to] describe the duties that meet the test of the exemption under California law, as well as to promote uniformity of enforcement. The IWC deems *only* those federal regulations *specifically* cited in its wage orders, and in effect at the time of promulgation of these wage orders, to apply in defining exempt duties under California law.' (Italics added.)" (*Harris v. Superior Court*, *supra*, 53 Cal.4th at pp. 179-180.[2]

Nevertheless, as discussed below, appellant has latched onto the "standard prerequisite" language of current 29 C.F.R. part 541.301(d). He erroneously refers to the

---

[2] The IWC's "Statement as to the Basis" for Wage Order 4-2001 appears at http://www.dir.ca.gov/iwc/statementbasis.pdf.

"standard prerequisite" language as the "official construction" of Wage Order 4-2001. Appellant asserts, "[B]ecause no 'prolonged course of specialized intellectual instruction and study' is a *standard prerequisite* to hiring or promotion as an Amgen SAS [Senior Associate Scientist], Amgen SASs are not exempt from the wage and hour laws as learned professionals." (Italics added.)

*Class Certification Principles*

"Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citation.] The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.] [¶] A trial court ruling on a certification motion determines 'whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.]" (*Sav-on Drug Stores, Inc. v. Superior Court*, *supra*, 34 Cal.4th at p. 326; see also *Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1021 ["The party advocating class treatment must demonstrate the existence of . . . substantial benefits from certification that render proceeding as a class superior to the alternatives"].)

"[A] class action will not be permitted if each member is required to 'litigate substantial and numerous factually unique questions' before a recovery may be allowed. [Citations.] . . . '[I]f a class action "will splinter into individual trials," common questions do not predominate and litigation of the action in the class format is inappropriate. [Citation.]' [Citations.]" (*Arenas v. El Torito Restaurants, Inc.* (2010) 183 Cal.App.4th 723, 732.)

"In the misclassification context, . . . trial courts deciding whether to certify a class must consider not just whether common questions exist, but also whether it will be feasible to try the case as a class action. Depending on the nature of the claimed exemption and the facts of a particular case, a misclassification claim has the potential to raise numerous individual questions that may be difficult, or even impossible, to litigate on a classwide basis." (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 27.)

*Standard of Review*

" 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]' [Citations.] . . . We must '[p]resum[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record . . . .' [Citation.]" (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1022.)

"Faced with the potential difficulties of managing individual issues in misclassification cases, many trial courts have denied certification or decertified the class before trial. [Citation.] Under deferential appellate review for abuse of discretion [citation], such decisions have been routinely upheld." (*Duran v. U.S. Bank National Assn.*, *supra*, 59 Cal.4th at p. 25.)

"[W]hen denying class certification, the trial court must state its reasons, and we must review those reasons for correctness. [Citation.] We may only consider the reasons stated by the trial court and must ignore any unexpressed reason that might support the ruling. [Citations.] [¶] We will affirm an order denying class certification if any of the trial court's stated reasons was valid and sufficient to justify the order, and it is supported by substantial evidence. [Citations.]" (*Knapp v. AT & T Wireless Servs., Inc.* (2011) 195 Cal.App.4th 932, 939.)

6

" 'The term "substantial evidence" means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value. [Citation.]' [Citation.] . . . ' "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." [Citation.]' [Citation.]" (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 222 Cal.App.4th 149, 159-160.)

*Appellant's Argument*

Appellant contends that the trial court "applied the incorrect criteria in evaluating the determination of the learned professions exemption." "We will reverse an order denying class certification if the trial court used improper criteria . . . , even if substantial evidence supported the order. [Citations.]" (*Knapp v. AT&T Wireless Services, Inc.*, *supra*, 195 Cal.App.4th at p. 939.)

Appellant argues that the court applied the "incorrect criteria" because it failed to consider the knowledge requirement of the learned professions exemption: the employee must be "primarily engaged in the performance of . . . [w]ork requiring knowledge of an advanced type . . . customarily acquired by a prolonged course of specialized intellectual instruction and study." (§ 11040, subd. 1(A)(3)(b)(i).) Appellant asserts that this requirement was not satisfied because respondent "had no standard requirement of a prolonged course of specialized academic instruction as a prerequisite for the . . . position [of Senior Associate Scientist]." Appellant continues: "The job announcements for [Senior Associate Scientist] openings . . . reveal that for a supermajority of all openings, the basic academic requirement was either a high school diploma or G.E.D. [passage of the General Educational Development Test], or simply a bachelor's degree, without any restriction as to field of study. [Citation.] An . . . Executive Director [of respondent] testified that a person with only a high school diploma could be hired or promoted into the [Senior Associate Scientist] position."

Therefore, appellant maintains, the trial court erroneously denied class certification on the ground that "[i]ndividualized issues predominate because of the variance of [Senior Associate Scientists'] job duties and their individual educational

7

background and experience."  Appellant explains, "Because the lack of a sufficient standard educational prerequisite negates an essential element of the learned professions exemption, the matters of individual proof that concerned the superior court are matters that the court will in fact never need to consider."  In other words, the lack of a standard educational prerequisite is dispositive and establishes that Senior Associate Scientists are nonexempt employees subject to hour and wage regulations.

*Appellant Misstates the Criteria for the Learned Professions Exemption*

Appellant contends that, for Senior Associate Scientists to be exempt, respondent must have a "*standard requirement* of a prolonged course of specialized academic instruction as a prerequisite for the . . . position."  (Italics added.)  His "challenge to [respondent's] claim of exemption is based on . . . the absence of a *standard* specialized education prerequisite."  (Italics added.)

Appellant misstates the criteria for the Learned Professions Exemption.  Wage Order 4-2001 does not provide that the employer must impose a "standard requirement of a prolonged course of specialized academic instruction as a prerequisite for the . . . position."  Instead, it provides that the employee must be "primarily engaged in the performance of . . . [w]ork requiring knowledge of an advanced type . . . customarily acquired by a prolonged course of specialized intellectual instruction and study." (§ 11040, subd. 1(A)(3)(b)(i).)  As of the date of Wage Order 4-2001, 29 C.F.R. part 541.301(d) provided, "The word 'customarily' implies that in the vast majority of cases the specific academic training is a prerequisite for entrance into the profession."  It did not provide that the specific academic training must be a "standard requirement" for employment.

*It Is Presumed that the Trial Court Applied the Correct Criteria*

"[I]t is presumed that the court followed the law. . . . ' "A judgment . . . of the lower court is *presumed* correct.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." '  [Citation.]  The mere fact that the court did not explicitly refer to [the knowledge requirement of the learned professions exemption in its minute order denying

8

class certification] does not support the conclusion that [the knowledge requirement] was ignored." (*Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563.) We therefore presume that the trial court applied the correct criteria, i.e., it properly considered the exemption's knowledge requirement.

*Substantial Evidence Supports the Trial Court's Finding that Resolution of the Exemption Issue Will Require Individualized Consideration of Each Class Member*

"The issue of *whether* the work is exempt or nonexempt is not germane to a determination of class certification. [Citation.] But the further point that resolving this issue—determining whether the work is exempt or nonexempt—will require consideration of each individual class member's particular work circumstances is certainly relevant to whether a class action is an appropriate mechanism for resolution of the parties' dispute." (*Walsh v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440, 1460.)

Appellant argues that the resolution of the exemption issue will not require individualized consideration of each class member because, as a matter of law, Senior Associate Scientists' work does not require "knowledge of an advanced type . . . customarily acquired by a prolonged course of specialized intellectual instruction and study." (§ 11040, subd. 1(A)(3)(b)(i).) Substantial evidence supports the trial court's implied finding to the contrary. In opposition to the motion for class certification, respondent presented the declarations of 160 Senior Associate Scientists, excluding appellant. We have not read all of these declarations. Respondent alleges, and appellant does not dispute, that "[n]ot one of the 160 declarants has less education than a bachelor's degree in a scientific discipline." Many of the declarants hold master's or doctoral degrees in the sciences. Appellant declared that he has "a medical bachelor[']s degree from Shanghai, China and [a] Masters of Science degree in pharmacology from Rush University." Appellant has not shown that any Senior Associate Scientist lacks specialized academic training in the sciences.

In their declarations, some of the Senior Associate Scientists make clear that their work requires "knowledge of an advanced type . . . customarily acquired by a prolonged

9

course of specialized intellectual instruction and study."  (§ 11040, subd. 1(A)(3)(b)(i).) Yuh-feng Chen, a doctor of veterinary medicine who also holds a master's degree "with a focus on virology," declared: "I specialize in biological in vitro assays.  To be able to work with these assays, it is important to have the type of specialized scientific understanding that I acquired through my years of studies and experience."  Elaina Cajulis, who holds a master's degree in biology, declared: "I used my advanced knowledge gained from my biology education.  I could not have completed [my assigned] tasks without this education because I needed to understand various biological processes in order to understand how the experiments worked and the results I obtained."  Beverly Adler, who holds a master's degree in biochemistry, declared: "I consistently relied on my scientific knowledge and education to perform my duties.  For example, without my scientific background, I would not have been able to identify errors in others' scientific explanations and discussions, or suggest improvements in the design of studies."  Paul Louis Auger, Jr., who holds a bachelor's degree in biology with a minor in chemistry and a master's degree in biochemistry, declared, "I could not perform my job duties without my scientific educational background."  Jiemin Bao, who holds a master's degree in chemistry, declared: "I regularly rely on my specialized educational background in performing my job duties.  Knowledge of chemistry and organic chemistry is critical for understanding the chemical processes with which I work."

Based on the Senior Associate Scientists' declarations, the trial court had a rational basis for concluding that appellant "failed to meet his burden of establishing the requisite elements for class certification" because "liability will turn upon an individualized analysis of the 'learned profession[s]' exemption."  " ' " '[S]o long as [the trial] court applies proper criteria and its action is founded on a rational basis, its ruling must be upheld.' [Citations.]" [Citations.]' [Citation.]" (*Quacchia v. DaimlerChrysler Corp.* (2004) 122 Cal.App.4th 1442, 1448-1449.)

We reject appellant's contention that the trial court will not need to individually consider each class member because "a large supermajority of . . . job postings [for Senior Associate Scientist] during the class period stated a basic educational requirement

10

of either (i) a high school diploma/G.E.D. or (ii) a bachelor's degree with absolutely no specification of acceptable fields of study."  For example, some job postings listed the "Basic Qualifications" as follows: "Doctorate degree OR Master's degree & 3 years of directly related experience OR Bachelor's degree and 5 years of directly related experience OR Associate's Degree & 10 years of directly related experience OR High School diploma/GED & 12 years of directly related experience."

Irrespective of the job postings, the Senior Associate Scientists' declarations provide a rational basis for concluding that they were primarily engaged in work that satisfied the knowledge requirement of the learned professions exemption.  Where, as here, the substantial evidence standard of review applies, " ' "the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, *contradicted or uncontradicted*," to support the findings below.  [Citation.]' " (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053, italics added, abrogated by statute on other grounds as stated in *DeBerard Properties, Ltd. v. Lim* (1999) 20 Cal.4th 659, 668.)

Appellant alleges that Gary L. Skiles, an executive director of respondent, testified "that there is no bar to a person without a bachelor's degree becoming [a Senior Associate Scientist]."  Skiles actually testified that Senior Associate Scientists "typically . . . have a [b]achelor's degree, at a minimum, or a [m]aster's degree."  But "[i]t is possible that somebody without a [b]achelor's degree may be promoted into that level."  Skiles was not aware of any Senior Associate Scientist who did not have a bachelor's degree. He testified that a bachelor's degree "would necessarily be in a science," typically the biological sciences or chemistry.  Skiles was asked, "[F]or the [b]achelor, that has to be in a science, is that correct, that's the bottom line?"  He responded, "Yes.  Yes."

Skiles's testimony alone constitutes substantial evidence that Senior Associate Scientists are primarily engaged in "[w]ork requiring knowledge of an advanced type . . . *customarily* acquired by a prolonged course of specialized intellectual instruction and study."  (§ 11040, subd. 1(A)(3)(b)(i), italics added; see *Mickelson Concrete Co. v. Contractors' State License Board* (1979) 95 Cal.App.3d 631, 634 ["A single witness'

11

testimony may be sufficient to satisfy the substantial evidence test"].)  Pursuant to 29 C.F.R. part 541.301(d) as of the date of Wage Order 4-2001, "[t]he word 'customarily' implies that in the vast majority of cases the specific academic training is a prerequisite for entrance into the profession."  Skiles made clear that in "the vast majority of cases" Senior Associate Scientists must at a minimum have a bachelor's degree in the sciences, typically the biological sciences or chemistry.

### *Disposition*

The order denying appellant's motion for class certification is affirmed.

NOT TO BE PUBLISHED.

YEGAN, A.P.J.

We concur:

PERREN, J.

VICTORIA CHAVEZ, J.*

---

*Assigned by Chairperson of the Judicial Counsel.

12

Henry J. Walsh, Judge

Superior Court County of Ventura

_____


Rob A. Hennig, Sereena J. Singh; Hennig Ruiz and Louis H. Kreuzer II, Joseph M. Herbert; The  Law Offices of Louis H. Kreuzer II, for Plaintiff andAppellant.


Jeffrey D. Wohl, Zachary P. Hutton, Paul W. Cane, Jr., Zina Deldar and Paul Hastings LLP, for Defendant and Respondent.