[No. G043744. Fourth Dist., Div. Three. Apr. 25, 2011.]

JULIA KNAPP, Plaintiff and Appellant, v.
AT&T WIRELESS SERVICES, INC., Defendant and Respondent.

**COUNSEL**

Franklin & Franklin, J. David Franklin; Law Offices of Anthony A. Ferrigno and Anthony A. Ferrigno for Plaintiff and Appellant.

Drinker Biddle & Reath, Michael J. Stortz and Beth O. Arnese for Defendant and Respondent.

OPINION

FYBEL, J.—

## INTRODUCTION

Plaintiff Julia Knapp, on behalf of herself and all others similarly situated, appeals from the trial court's order denying her motion for class certification as to her claims against defendant AT&T Wireless Services, Inc. (AWS), for violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), and fraud. Knapp's claims are based on the allegation that AWS's descriptions of its wireless service plans as providing a certain number of minutes each month for a certain rate were misleading in light of AWS's billing practice of rounding up any partially used minutes for a call to the next full minute.

We affirm. Substantial evidence showed AWS did not make uniform representations to proposed class members. Instead, as we discuss in detail *post*, the evidence showed the determination whether AWS made any misrepresentations or otherwise engaged in any unfair, unlawful, or fraudulent conduct, would necessarily involve the resolution of individualized issues as to each class member. Thus, the trial court did not err in denying Knapp's motion for class certification on the ground common issues of law or fact did not predominate over individual issues.

## PROCEDURAL HISTORY

### I.

#### PRIOR APPEALS

This is the third time this case has been before us. This case was originally brought against AWS by then plaintiff Diane Tucker who, in a representative capacity, sought, inter alia, injunctive relief under the UCL. She alleged AWS did not fully disclose the way it computed cellular telephone airtime until after a subscriber had signed a wireless service agreement with AWS. In *Tucker v. AT&T Wireless Services, Inc.* (Apr. 20, 2005, G034038) (nonpub. opn.), we concluded Tucker lacked standing after the passage of Proposition 64 to pursue her representative claims against AWS under the UCL, vacated an order denying AWS's motion to compel arbitration, and remanded for further proceedings.

Following remand, Tucker moved for leave to amend to substitute a plaintiff with standing, add class allegations, and assert a cause of action under the CLRA. The trial court denied the motion. In *Tucker v. AT&T Wireless Services, Inc.* (Nov. 28, 2006, G036980) (nonpub. opn.), we reversed the trial court's judgment, concluding the trial court erred by denying leave to amend to substitute a plaintiff with standing and to add the class allegations. We also remanded with directions for the trial court to consider whether AWS would suffer undue prejudice from the addition of the proposed CLRA cause of action.

## II.

### THE THIRD AMENDED COMPLAINT

In the third amended complaint (the complaint), Knapp was substituted in as plaintiff in Tucker's place. The complaint alleged Knapp was a subscriber to AWS's wireless telephone service, who along with other subscribers of AWS, allegedly suffered injury because AWS failed to sufficiently disclose its billing practices that the number of usable airtime minutes actually provided to consumers under AWS's various service plans was less than what was represented.[1]

The complaint asserted claims against AWS for (1) unlawful business practice in violation of the UCL; (2) unfair business practices in violation of the UCL; (3) fraudulent business practices in violation of the UCL; (4) fraud and deceit; and (5) violation of the CLRA.

## III.

### MOTION FOR CLASS CERTIFICATION

Knapp filed a motion seeking to certify the following class: "[A]ll persons who have ever been subscribers under a term contract to the wireless telephone service in California of [AWS] from and after January 1, 1999 until October 1, 2004." The following is a summary of the evidence presented by the parties in connection with the motion for class certification.

---

[1] The complaint generally alleged: "This action concerns the Defendant falsely and deceptively representing the amount of usable airtime minutes contained in its various rate plans/service plans, and concealing, and failing to disclose, to subscribers and prospective subscribers, the percentage of airtime minutes in each of the Defendant's rate plans/service plans, which become unusable by the subscribers as a result of billing practices and other practices engaged in by the Defendant. As a consequence, the actual price of usable airtime minutes in each of the Defendant's rate plans/service plans is concealed from the Defendant's subscribers, and the subscribers are overcharged for usable airtime minutes."

AWS offers a wide range of wireless service plans to customers. It markets its various plans using print media, its Web site, television, and radio. AWS sells its services through direct mailings and at kiosks in malls and other locations. AWS maintains its own stores. Local, regional, and national retailers also use their own advertisements to market AWS's products and services. Customers may subscribe to a service plan at a store (either operated by AWS or by a third party), at a national retail chain store, online, or over the telephone. Retailers utilize their own sales processes and documents provided by retailers to customers "were specific to the retailer."

Among AWS's offerings is the service plan purchased by Knapp in 2000, which was described as 400 airtime minutes per month for a monthly charge of $39.99. Knapp produced several of AWS's rate plan guides in support of her motion. All but one of the rate plan guides include the disclosure that airtime "is billed in full minute increments with partial minutes rounded up to the next full minute" (the rounding up policy). In each of the six welcome guides that were provided to customers upon receipt of their handset, AWS again disclosed the rounding up policy utilizing essentially the same language quoted *ante*.

In opposition to the motion for class certification, AWS submitted the declaration of Fred Devereux, who was employed by AWS as a vice-president of sales. In his declaration, Devereux declared AWS's "practice of 'rounding up' the last partial minute of use to the next full minute increment is standard in the telecommunications industry across the country. A 'minute' is the minimum standard unit of measure in the telecommunications business, and virtually all carriers 'round up' partially-used minutes in measuring call duration for billing purposes. This is why [AWS] presented its rate plans as a fixed price 'per minute' or package of 'minutes' instead of seconds or some other unit of measure for time." He further stated: "Based on my interactions with [AWS] customers, it is my belief that customers understood that [AWS] followed the industry standard and 'rounded up.' It has always been my understanding that customers were aware that their bills showed that [AWS] 'rounded up' and that consumers understood that the bills included full-minute increments."

Knapp stated that in 2000, she conducted Internet research into wireless service providers and looked at AWS's Web site. She saw that AWS represented that she could obtain 250 airtime minutes per month for $29.99 or 400 minutes per month for $39.99. She did not see the rounding up policy on the Web site. Two days later, she contacted an AWS sales representative on the telephone to discuss what plan she should purchase and the amount of airtime minutes that would be available. Knapp did not ask the representative whether all monthly airtime minutes were usable because she believed that all

airtime minutes she purchased would be usable. She was unaware she would "suffer a loss of use of a substantial number of [her] airtime minutes" due to a billing practice such as the rounding up policy.

Knapp signed up for the 400 airtime minutes per month plan for $39.99 monthly and a handset was shipped to her along with written materials. Knapp did not read the written materials which, according to AWS, would have necessarily included the welcome guide containing the rounding up policy. She had since at least twice renewed service with AWS, although she changed her plan to 250 airtime minutes for $29.99. Knapp stopped being a customer of AWS in October 2004 when it was acquired by Cingular Wireless.

## IV.

### KNAPP APPEALS FROM THE TRIAL COURT'S DENIAL OF THE MOTION FOR CLASS CERTIFICATION.

After the parties' counsel argued the motion for class certification, the trial court denied the motion on the ground that common issues did not predominate. Knapp appealed.

## DISCUSSION

## I.

### GENERAL CLASS ACTION PRINCIPLES AND STANDARD OF REVIEW

■ "Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' ■ The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citation.] The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194] (*Sav-On*).)

■ The question of class certification is essentially procedural and does not involve the legal or factual merits of the action. (*Sav-On, supra*, 34 Cal.4th at p. 326.) The ultimate question in ruling on a class certification motion is whether the issues which may be adjudicated as a class, when compared with

the issues which must be adjudicated individually, are sufficiently numerous or substantial to make a class action advantageous to both the litigants and the judicial process. (*Ibid.*)

Trial courts have discretion in granting or denying motions for class certification because they are well situated to evaluate the efficiencies and practicalities of permitting a class action. (*Sav-On, supra,* 34 Cal.4th at p. 326.) Despite this grant of discretion, appellate review of orders denying class certification differs from ordinary appellate review. Under ordinary appellate review, we do not address the trial court's reasoning and consider only whether the result was correct. (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 843 [100 Cal.Rptr.3d 637] (*Kaldenbach*).) But when denying class certification, the trial court must state its reasons, and we must review those reasons for correctness. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436 [97 Cal.Rptr.2d 179, 2 P.3d 27].) We may only consider the reasons stated by the trial court and must ignore any unexpressed reason that might support the ruling. (*Ibid.*; see also *Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1204–1205 [76 Cal.Rptr.3d 804].)

We will affirm an order denying class certification if any of the trial court's stated reasons was valid and sufficient to justify the order, and it is supported by substantial evidence. (*Sav-On, supra,* 34 Cal.4th at pp. 326–327; see also *Kaldenbach, supra,* 178 Cal.App.4th at p. 844 ["We may not reverse, however, simply because *some* of the court's reasoning was faulty, so long as *any* of the stated reasons are sufficient to justify the order."].) We will reverse an order denying class certification if the trial court used improper criteria or made erroneous legal assumptions, even if substantial evidence supported the order. (*Sav-On, supra,* 34 Cal.4th at pp. 326–327; *Linder v. Thrifty Oil Co., supra,* 23 Cal.4th at pp. 435–436.) A trial court's decision that rests on an error of law is an abuse of discretion. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311 [93 Cal.Rptr.3d 559, 207 P.3d 20]; *Pfizer Inc. v. Superior Court* (2010) 182 Cal.App.4th 622, 629 [105 Cal.Rptr.3d 795].)

II.

### THE TRIAL COURT SUFFICIENTLY STATED THE REASON FOR ITS DENIAL OF THE MOTION FOR CLASS CERTIFICATION.

Knapp contends the trial court committed reversible error by failing to state in the order its reasons for denying the motion for class certification. The trial court was not required to state its reasons in the order denying the motion. Instead, we review the entire record to determine whether the trial court's reasons were expressed. (See *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 656 [22 Cal.Rptr.2d 419] ["Review of the entire record"

disclosed the trial court's denial of a motion for class certification "was based upon proper criteria and substantial evidence."]; *National Solar Equipment Owners' Assn. v. Grumman Corp.* (1991) 235 Cal.App.3d 1273, 1281 [1 Cal.Rptr.2d 325] ["The transcript of the hearing on the class certification motion leaves little doubt as to why the trial court felt the Association failed to show uniformity of the representations."]; *Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 829 [97 Cal.Rptr.2d 226] ["A review of the transcript of the argument on the motion [for class certification] indicates the trial court was concerned about 'the sameness of the facts.' "]; *Stephens v. Montgomery Ward* (1987) 193 Cal.App.3d 411, 417–418 [238 Cal.Rptr. 602] [findings of fact and conclusions of law may be requested but are not required as a matter of law].)

Here, the record clearly shows the trial court denied the motion for class certification due to a lack of commonality of issues. After the parties' counsel argued the motion for class certification, the court stated: "You're here today proposing that a class of plaintiffs should properly pursue this claim. And there really is substantial lack of evidence of the similarity, the commonal-[i]ty that would extend through more than just the plaintiff. [¶] The absence of any further declarations, the absence of any other evidence, the absence of any suggestion of a uniform misunderstanding or uniform error in perceiving what the rights are leaves the court with no option, in my opinion, other than to deny this motion this morning for certification."[2]

As discussed *ante*, a lack of commonality is a proper basis for denying a motion for class certification. We next consider whether the trial court abused its discretion in reaching its conclusion, and analyze whether substantial evidence supported its conclusion.

### III.

#### SUBSTANTIAL EVIDENCE SUPPORTED THE TRIAL COURT'S CONCLUSION KNAPP FAILED TO SHOW COMMON QUESTIONS OF FACT PREDOMINATED OVER INDIVIDUALIZED QUESTIONS.

In her opening brief, Knapp contends, "[q]uestions of law or fact common to the class predominate over individual issues in this case." As discussed *ante*, the proper standard of review is not whether substantial evidence might have supported an order granting the motion for class certification, but whether substantial evidence supported the trial court's conclusion that

---

[2] AWS contends the trial court's comments reflect an additional reason for denying the motion for class certification—Knapp's claims were not typical of the members of the proposed class. We do not need to address the issue of typicality because, as discussed *post*, substantial evidence supported the court's conclusion Knapp failed to establish commonality.

common questions of law or fact did not predominate over individual issues. (See *Kaldenbach, supra,* 178 Cal.App.4th at p. 844 ["we are concerned with whether substantial evidence supports the court's reasoning, not with whether there was evidence that might have supported a different conclusion"].) We draw inferences from the evidence in favor of the order on the motion for class certification. (*Sav-On, supra,* 34 Cal.4th at p. 328.)

For the reasons discussed *post,* substantial evidence supported the trial court's finding that common issues did not predominate over individual issues.

## A.

### *General Principles of Commonality*

■ Commonality as a general rule depends on whether the defendant's liability can be determined by issues common to all class members: " 'A class may be certified when common questions of law and fact predominate over individualized questions. As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages. . . . [T]o determine whether common questions of fact predominate the trial court must examine the issues framed by the pleadings and the law applicable to the causes of action alleged.' " (*Ali v. U.S.A. Cab Ltd.* (2009) 176 Cal.App.4th 1333, 1347 [98 Cal.Rptr.3d 568], quoting *Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 916 [107 Cal.Rptr.2d 761].)

"In examining whether common issues of law or fact predominate, the court must consider the plaintiff's legal theory of liability. [Citation.] The affirmative defenses of the defendant must also be considered, because a defendant may defeat class certification by showing that an affirmative defense would raise issues specific to each potential class member and that the issues presented by that defense predominate over common issues. [Citations.]" (*Walsh v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440, 1450 [56 Cal.Rptr.3d 534].)

## B.

### Cohen v. DIRECTV, Inc. *(2009) 178 Cal.App.4th 966 [101 Cal.Rptr.3d 37]; and* Kaldenbach, supra, *178 Cal.App.4th 830*

In *Cohen v. DIRECTV, Inc.* (2009) 178 Cal.App.4th 966, 979 (*Cohen*) and *Kaldenbach, supra,* 178 Cal.App.4th at page 850, the appellate court concluded in each case that the trial court did not abuse its discretion by denying

a motion for class certification of UCL, fraud, and/or CLRA claims on the ground that commonality of issues was lacking.

█ In *Cohen, supra*, 178 Cal.App.4th at page 969, the plaintiff, a subscriber to services provided by the defendant satellite television company, filed a complaint containing claims for violations of the UCL and the CLRA based on the allegation the defendant disseminated false advertising to induce him and others to purchase more expensive high definition (HD) television services. The appellate court affirmed the trial court's order denying the plaintiff's motion for class certification, stating: "The record supports the trial court's finding that common issues of fact do not predominate over the proposed class because the class would include subscribers who never saw DIRECTV advertisements or representations of any kind before deciding to purchase the company's HD services, and subscribers who only saw and/or relied upon advertisements that contained no mention of technical terms regarding bandwidth or pixels, and subscribers who purchased DIRECTV HD primarily based on word of mouth or because they saw DIRECTV's HD in a store or at a friend's or family member's home. In short, common issues of fact do not predominate over [the plaintiff]'s proposed class because the members of the class stand in a myriad of different positions insofar as the essential allegation in the complaint is concerned, namely, that DIRECTV violated the CLRA and the UCL by inducing subscribers to purchase HD services with false advertising." (178 Cal.App.4th at p. 979.)

In *Kaldenbach, supra*, 178 Cal.App.4th at page 833, the plaintiff sued two insurance companies regarding the sale of "a so-called 'vanishing premium' life insurance policy" and alleged claims for violation of the UCL, violation of the CLRA and common law fraud and concealment. The trial court denied the plaintiff's motion for class certification on grounds which included the plaintiff's failure to establish commonality. (178 Cal.App.4th at p. 841.)

The appellate court affirmed. (*Kaldenbach, supra*, 178 Cal.App.4th at p. 834.) As to the UCL claim, the court stated: "The trial court could properly conclude there was no showing of uniform conduct likely to mislead the entire class, and the viability of a UCL claim would turn on inquiry into the practices employed by any given independent agent—such as whether the agent involved in any given transaction took [the defendants'] training and read [the defendants'] manuals or used the training and materials in sales presentations, and what materials, disclosures, representations, and explanations were given to any given purchaser. The trial court did not abuse its discretion in concluding those issues predominated and could not be proven on a classwide basis." (178 Cal.App.4th at p. 850.)

As to the common law fraud and concealment cause of action, the appellate court in *Kaldenbach, supra*, 178 Cal.App.4th at page 851, added:

"Here, the evidence indicates there were not common representations or omissions. [The defendants'] training materials and methods were not uniform, there was no requirement insurance agents provide any written materials or illustrations to purchasers during a sales presentation, agents were not required to take [the defendants'] training or to utilize any particular sales method or materials in their sales presentations, and agents were free to ignore the training and written materials." The court concluded, "the evidence supports the trial court's conclusion there were significant individual issues as to whether there were in fact any misrepresentations, omissions, or nondisclosures made to individual purchasers. Accordingly, we cannot say the trial court abused its discretion by denying class certification." (*Ibid.*)

## C.

### *Substantial Evidence Supported the Conclusion Common Issues Do Not Predominate over Knapp's Proposed Class.*

Here, as in *Cohen, supra,* 178 Cal.App.4th at page 979, substantial evidence supported the trial court's conclusion that common issues of fact did not predominate over the proposed class "because the members of the class stand in a myriad of different positions insofar as the essential allegation in the complaint is concerned." Knapp's motion was based on the contention AWS violated the UCL and the CLRA and engaged in common law fraud by making representations about its service plans which misled Knapp and others to believe that the number of minutes attached to each of AWS's service plans were all usable airtime minutes when in fact it is AWS's policy to round up partially used airtime minutes to the next full minute for billing purposes.

The face of the complaint itself reveals that AWS's alleged misrepresentations were not uniformly made to proposed class members. The complaint acknowledges some misrepresentations were oral and others were made in various written materials.

The evidence produced in connection with the motion for class certification confirmed the lack of commonality in representations (or omissions) by AWS to members of the proposed class regarding its service plans. Substantial evidence showed AWS used several different channels to market its service plans. AWS used print advertisements in newspapers and magazines. Online promotions were advertised on AWS's Web site. AWS advertised on television and the radio, sent out direct mailings, and maintained kiosks in malls and other locations. Prospective customers could begin their service at an AWS store, a third party's store, a national retail chain store, online, or over

the telephone. Retailers had their own sales processes and the documents that they provided to the customers were specific to the retailer.

Consequently, the proposed class here would include subscribers who solely spoke with a representative on the telephone, those who only considered certain advertisements, and those who only viewed AWS's Web site and began their service online; an individual inquiry would be required to determine whether the representations received by each proposed class member constituted misrepresentations, omissions, or nondisclosures. Thus, what business practices were allegedly unfair, unlawful, or fraudulent necessarily turns on an individualized assessment of which representations were made to each proposed class member.

To further complicate matters, the record contains several versions of AWS's rate plan guides and six welcome guides provided to new subscribers. All but one of those materials contain the express disclosure to the effect that airtime for each call "is billed in full minute increments with partial minutes rounded up to the next full minute." Knapp stated in her deposition that she did not read the welcome guide that accompanied her handset upon delivery and took the position she was unaware of AWS's multiple disclosures regarding the rounding up policy. But other members of the proposed class may very well have seen this express disclosure or discussed the rounding up policy with a sales representative in person or on the telephone, which constitutes facts that would affect the determination whether a misrepresentation or omission had occurred.

In addition, AWS produced evidence that the rounding up policy is standard in the telecommunications industry across the country, as a minute is the minimum standard unit of measure in the telecommunications business. Evidence showed that "virtually all carriers 'round up' partially-used minutes in measuring call duration" for billing purposes and that there was a general awareness among AWS customers (including members of the proposed class) of the rounding up policy. Although Knapp testified she was unaware of the rounding up policy, she did not produce any evidence that any other member of the proposed class was similarly unaware of the rounding up policy.

Thus, the trial court did not abuse its discretion by finding a lack of commonality of issues and accordingly denying the motion for class certification.

Knapp argues her claims were based on a uniform misrepresentation, stating AWS "knew that each customer of [AWS] was required to select a single rate plan from several rate plans being offered by [AWS], and that the number of airtime minutes which were represented to be available for the

customers' use was substantially overstated . . . because . . . every single telephone call is rounded up." Knapp did not produce evidence that AWS ever represented that the number of minutes associated with a particular rate plan were all "usable airtime minutes." Instead, Knapp contends AWS was deceitful in attaching a certain number of minutes to a rate plan when a fraction thereof would not be usable in light of the rounding up policy. Whether the mere association of a certain number of minutes to a rate plan would so mislead proposed class members necessarily involves individualized inquiries for the reasons discussed *ante*.

Knapp also argues the trial court erred by failing to certify a class as to her UCL claims in light of the Supreme Court's decision in *In re Tobacco II Cases, supra*, 46 Cal.4th 298. That case, however, does not affect our analysis as to commonality. As the court explained in *Cohen, supra*, 178 Cal.App.4th at page 980: "Although the rules under the UCL may or may not be different following our Supreme Court's recent decision in *In re Tobacco II Cases* . . . (*Tobacco II*), . . . we do not understand the UCL to authorize an award for injunctive relief and/or restitution on behalf of a consumer who was never exposed in any way to an allegedly wrongful business practice. In other words, we find the trial court expressed a 'valid reason' for denying class certification when it examined the nature of the claims in [the plaintiff]'s case, and juxtaposed those claims against the respective positions of the class members."

■ The *Cohen* court further explained, "[i]n the contextual setting presented by [the plaintiff]'s present case, we find *Tobacco II* to be irrelevant because the issue of 'standing' simply is not the same thing as the issue of 'commonality.' Standing, generally speaking, is a matter addressed to the trial court's jurisdiction because a plaintiff who lacks standing cannot state a valid cause of action. [Citations.] Commonality, on the other hand, and in the context of the class certification issue, is a matter addressed to the practicalities and utilities of litigating a class action in the trial court. We see no language in *Tobacco II* that suggests to us that the Supreme Court intended our state's trial courts to dispatch with an examination of commonality when addressing a motion for class certification. On the contrary, the Supreme Court reiterated the requirements for maintenance of a class action, including (1) an ascertainable class and (2) a ' "community of interest" ' shared by the class members. [Citation.]" (*Cohen, supra*, 178 Cal.App.4th at p. 981.)

■ In her opening brief, Knapp relies upon *Vasquez v. Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964] and *Occidental Land, Inc. v. Superior Court* (1976) 18 Cal.3d 355 [134 Cal.Rptr. 388, 556 P.2d 750] and their progeny to show her claims based on fraudulent conduct should be litigated on a classwide basis. Those cases are inapposite. As stated in

*Kaldenbach, supra,* 178 Cal.App.4th at page 851: "Those cases held that '*when the same material misrepresentations have actually been communicated to each member of a class,* an inference of reliance arises as to the entire class. [Citations.]' " The *Kaldenbach* court further explained: "But the *Vasquez/Occidental Land* class injury inference does not come into play absent evidence of uniform material misrepresentations having been actually made to class members." (*Ibid.*) In *Kaldenbach,* the court concluded there were not common representations or omissions made to proposed class members in light of the lack of uniformity in the defendants' training materials and other written materials and the lack of uniformity in the agents' use of such materials. Consequently, "the evidence supports the trial court's conclusion there were significant individual issues as to whether there were in fact any misrepresentations, omissions, or nondisclosures made to individual purchasers. Accordingly, we cannot say the trial court abused its discretion by denying class certification." (*Ibid.*)

In sum, because the resolution of the above described individualized issues is necessary to determine AWS's liability for its alleged wrongful conduct, the trial court did not abuse its discretion.

## DISPOSITION

The order is affirmed. Respondent shall recover costs on appeal.

Bedsworth, Acting P. J., and Ikola, J., concurred.

A petition for a rehearing was denied May 20, 2011, and appellant's petition for review by the Supreme Court was denied August 10, 2011, S193539. Baxter, J., and Werdegar, J., were of the opinion that the petition should be granted.