Filed 2/6/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHERYL DOWNEY et al., | B291662 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC575661) |
| v. | |
| PUBLIC STORAGE, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Carolyn B. Kuhl, Judge. Affirmed.

Baker, Burton & Lundy, Brad Baker and Albro Lundy; Dale E. Washington; and Raymond Zakari for Plaintiffs and Appellants.

Keker, Van Nest & Peters, John W. Keker, Erin E. Meyer, Eduardo E. Santacana, Christopher S. Sun; Willkie Farr & Gallagher and Simona A. Agnolucci for Defendant and Respondent.

\* \* \* \* \* \*

A trial court may certify a class in a proposed class action lawsuit only if, among other things, the court finds a "'community of interest'" among the proposed class members (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 28 (*Duran*)), which in part means that ""'common questions of law or fact'"" ""'predominate'"" because "the elements necessary to establish liability are susceptible of common proof" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021, 1024 (*Brinker*)).  Where, as here, a proposed class action lawsuit seeks restitution for violations of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) and false advertising law (*id.*, § 17500 et seq.) based on a series of allegedly deceptive advertisements offering a special promotional rate but defines the class as everyone who received the special promotional rate, must the plaintiffs establish that the following "elements" are "susceptible of common proof"—namely, (1) that the class members were exposed to the advertisements, and (2) that the various permutations of the advertisements were deceptive?  We conclude that the answer is "yes," and that language in *In re Tobacco II Cases* (2009) 46 Cal.4th 298 (*Tobacco II*) is not to the contrary.  Because the trial court's finding that the issues of exposure and deceptiveness were not susceptible of common proof is supported by substantial evidence, we affirm its order denying class certification.

**FACTS AND PROCEDURAL BACKGROUND**

**I.     Facts**

**A.     *Public Storage and its procedures for renting space***

Defendant Public Storage, Inc. (Public Storage) rents storage units to the public, and has more than 400 storage facilities throughout California.

2

A person who rents a unit from Public Storage must pay (1) a monthly rent, and (2) a one-time "New Account Administration Fee" of $22 or $24 (new account fee). The renter must also (1) supply his or her own lock for the space, and (2) have insurance that covers the items to be stored. Rather than supplying their own locks or insurance, renters have the option of purchasing a lock or an insurance policy from Public Storage. Between 2011 and 2016, Public Storage used four different insurance rider forms: The form used from 2011 through March 2012 stated that renters could "elect[] to obtain" an insurance policy from Public Storage; the form used from March 2012 through July 2013 clarified that any policy obtained from Public Storage might be duplicative of homeowner's or renter's insurance; the form used from July 2013 through January 2016 further clarified that the insurance requirement could be met by "[an]other applicable insurance" policy; and the form used from January 2016 onward even further clarified that a policy from Public Storage was "not required in order to store . . . goods."

**B.      *Public Storage's $1 first month's rent promotion***

From 1983 to the present, Public Storage has offered the public a promotional rate of $1 for the "First Month" or "First Month['s] Rent" of a storage unit.

The $1 promotional rate has appeared in a variety of different media: Public Storage advertised the $1 promotional rate "sporadic[ally]" on commercials on local television in 2011 and 2012 and on select weeks on national cable channels from 2013 through 2017; on banners affixed to some of the storage facilities; on various Internet-based outlets, including Google, Yahoo and similar search engines as paid responses to certain search queries, Facebook and other social media sites, and

3

YouTube—all of which referred the viewer to Public Storage's website; on some webpages of Public Storage's own website; briefly on radio commercials on Los Angeles Dodgers Radio in 2010 and 2011; and sometimes in conjunction with other businesses, such as Budget Rental Trucks and Six Flags amusement parks.

The "wording" of the advertisements "has varied over time and in [this] different media." Some of the television ads stated that the $1 promotional rate "does not include applicable deposits or fees"; some of the YouTube ads stated that "Other restrictions, taxes and fees apply"; and many of the banners, any of the Internet ads on platforms that allows for asterisked text, and Public Storage's website itself (to which all Internet ads funneled a viewer), placed an asterisk next to many $1 promotional rate advertisements with a second asterisk at the bottom of the website explaining that rate was subject to "fees," "taxes" or "restrictions."

The $1 promotional rate is automatically applied to certain storage units regardless of whether the renter invokes (or otherwise knows about) the rate. A renter who reserves a unit online will (1) see a webpage that displays the $1 rate for the remainder of the calendar month as well as pro-rated into the next month as well as the $22 or $24 new account fee, and (2) receive a confirmatory email setting forth the $1 rate and the new account fee. A renter who reserves a unit by calling Public Storage and who provides an email address will receive a confirmatory email setting forth the $1 rate and the new account fee. And all renters—whether they reserve online, reserve by phone, or simply walk in and rent a space—are told, before they sign any rental contract, that they will be charged the new

4

account fee.  Public storage also mandates that its employees follow a script that tells renters, before they sign a rental contract, that they must have a lock and insurance, but they have the option of using their own locks and insurance or buying a lock or insurance policy from Public Storage.

### C. *Implementation of the $1 Promotional Rate*

Between March 6, 2011 and February 8, 2016, Public Storage applied the $1 promotional rate to units rented by 650,296 customers.  Of these customers, 40 percent made an online reservation for a storage unit and 33.4 percent simply "walked in" without any existing reservation.  A total of 57 percent of the 650,296 customers received a confirmatory email detailing the $1 promotional rate and the new account fee.  Although four customers (three of whom, as described below, became the plaintiffs pertinent to the claim at issue in this appeal) reported that Public Storage employees told *them* that they had to buy a Public Storage lock, only 69 percent of the 650,296 customers during the five-year window bought a lock from Public Storage; the remaining 31 percent used their own locks.  And although the same four customers reported that Public Storage employees told them that they had to purchase a Public Storage insurance policy, only 86.7 percent of the 650,296 customers during the five-year window purchased a Public Storage policy; the remaining 13.3 percent, including one of the customers himself on one of the three occasions he rented a storage unit, relied upon another insurance policy.

## II.    Procedural Background

### A. *Operative complaint*

In March 2015, a handful of Public Storage customers brought a lawsuit alleging that Public Storage's $1 promotional

5

rate was deceptive. In the operative fourth amended complaint, named plaintiffs Roderick Goff II (Goff), Heather Granado (Granado) and Scott Mueller (Mueller) (collectively, plaintiffs) allege, among other things, that the $1 promotional rate violates the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) and constitutes a false advertisement (*id.*, § 17500 et seq).[1] Specifically, plaintiffs allege that Public Storage's $1 promotional rate advertisements constitute a deceptive "bait and switch" because customers were promised a $1 rate but ultimately had to pay more than $1 for their first month due to (1) having to pay the new account fee, (2) being charged a second month's rent on the first day of the next calendar month, even if the first 28 to 31 days (at the $1 promotional rate) were not yet over, (3) having to buy a lock, and (4) having to provide insurance coverage for the items in the storage unit. Plaintiffs sought to bring a class action.

**B.    *Class certification motion***

In December 2017, plaintiffs moved to certify a class defined as "all California tenants who rented storage units from a California Public Storage facility under the $1 Special

---

[1]    These plaintiffs and/or other named plaintiffs also allege claims for (1) unfair competition and false advertising in relation to Public Storage's sale of insurance policies, (2) injunctive relief against Public Storage's alleged practices of cutting customers' non-Public Storage-purchased locks, prematurely locking customers out of their spaces, not providing customers with copies of their rental contracts, and selling insurance without a license, and (3) declaratory relief regarding Public Storage's sale of insurance. These claims have been split off into a different lawsuit or are otherwise no longer at issue in this case.

[P]romotion from March 6, 2011 through February 8, 2016 and paid over and above the $1 advertised for the $1 Special" by paying (1) "an extra 'administrative fee;'" (2) "purchas[ing] locks;" (3) "purchas[ing] insurance;" and/or (4) "not receiv[ing] a full month's rent (a full month being 28-31 consecutive days depending on the month) without further charges."

After Public Storage filed an opposition and plaintiffs filed their reply, the trial court held a hearing to entertain argument. At that hearing, plaintiffs clarified that they were seeking to certify a class *only* for purposes of obtaining restitutionary relief, not injunctive relief.

In a 10-page order, the trial court denied plaintiff's motion for class certification. The court found that plaintiffs had not "show[n] that common issues of fact and law predominate" in two respects. First, plaintiffs "ha[d] not shown that all class members were exposed to" the $1 promotional rate advertisements. Those advertisements, the court found, were "frequently disconnected from the rental process" because customers could "walk in" and rent a space without seeing a banner on the Public Storage facility or could reserve a unit on Public Storage's website without seeing the ad. Because the class was defined to encompass anyone who had "rented under the $1 Special rate" irrespective of whether they had ever seen the advertisements for that rate, the issue of whether class members had been exposed to the advertisements at issue was not susceptible of common proof. Second, plaintiffs had "admit[ted] that the advertisements at issue are not uniform." Because many of the specific advertisements made further disclosures, making it possible that "one type of advertisement is . . . deceptive but another is not," the issue of whether the class members had been

7

exposed to *deceptive*—and hence, actionable—advertisements was also not susceptible of common proof.

Plaintiffs filed a timely notice of appeal.[2]

## DISCUSSION

Plaintiffs argue that the trial court erred in denying their motion to certify their proposed class. Because the decision whether to certify a class falls "'squarely within the discretion of [a] trial court,'" our review is limited to whether that decision constitutes an abuse of discretion. (*Brinker*, *supra*, 53 Cal.4th at pp. 1017, 1022.) In conducting this review, we look solely to the "reasons given by the trial court for denial of class certification" and may reverse only if those reasons (1) "rest[] on improper criteria" or "erroneous legal assumptions" or (2) are "unsupported by substantial evidence." (*Id.* at p. 1022; *Davis-Miller v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 106, 120-121 (*Davis-Miller*).) We review a trial court's specific finding that "common questions of law and fact" are not "predominant" for substantial evidence. (*Brinker*, at pp. 1021-1022.)

## I. Law Governing Class Certification

A lawsuit may proceed as a class action if there is (1) "'an ascertainable class,'" and (2) "'a well-defined community of interest among the class members.'" (*Duran*, *supra*, 59 Cal.4th at p. 28, quoting *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913; see generally Code Civ. Proc., § 382.) The community of interest requirement requires a showing, among

---

[2] We have jurisdiction over the denial of a class certification motion under the so-called "death knell" doctrine. (E.g., *Fierro v. Landry's Restaurant Inc.* (2019) 32 Cal.App.5th 276, 280, fn. 4.)

8

other things, that "common questions of law or fact" "predominate" as to the class members.[3] (*Brinker, supra,* 53 Cal.4th at pp. 1021, 1025.)

In deciding whether common questions predominate, we ask whether "the issues framed by the pleadings and the law applicable to the causes of action alleged" will be "susceptible of common proof" for all members of the proposed class *or*, instead, whether the class members will "'be required to litigate numerous and substantial questions determining [their] individual right to recover following [a] 'class judgment' on common issues.'" (*Brinker, supra,* 53 Cal.4th at p. 1024; *Duran, supra,* 59 Cal.4th at p. 28; *In re Vioxx Cases* (2009) 180 Cal.App.4th 116, 128 (*Vioxx*).) The "'ultimate question'" is *which* will predominate—"'issues which may be jointly tried'" or "'those requiring separate adjudication.'" (*Brinker,* at p. 1021.) The focus of the predominance inquiry is on the facts and "the elements necessary to establish" ""'the defendant's liability'"" rather than the *amount* of damages. (*Duran,* at p. 28; *Brinker,* at pp. 1021, 1024.) Given these principles, the pertinent questions then become: (1) What elements must be proven to establish the defendant's liability, and (2) Are these elements susceptible of common proof?

The predominance requirement is a critical limitation on the scope of the class action mechanism. Although class actions enforcing the Unfair Competition Law "'serve [an] important

---

[3] The community of interest requirement also requires a showing that the class representatives (1) have "claims or defenses typical of the class" and (2) "can adequately represent the class." (*Brinker,* at p. 1021.) These requirements are not at issue in this appeal.

9

role[] in the enforcement of consumers' rights'" by enabling consumers to bring a collective action when "the relatively small individual recovery" would make a single-plaintiff lawsuit infeasible (*Tobacco II*, *supra*, 46 Cal.4th at p. 313; *Fletcher v. Sec. Pac. Nat'l Bank* (1979) 23 Cal.3d 442, 452 (*Fletcher*)), "the class action procedural device" cannot alter "a party's substantive rights" by "foreclos[ing] . . . litigation of . . . defenses turn[ing] on individual questions" (*Duran*, *supra*, 59 Cal.4th at p. 34).

The burden of establishing that common issues predominate, like all prerequisites for class certification, rests with the plaintiff. (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 843 (*Kaldenbach*).)

## II. Analysis

### A. *What must be proven?*

Plaintiffs' proposed class seeks restitution under the Unfair Competition Law for a "fraudulent" business practice and under the false advertising law.[4] (Bus. & Prof. Code, §§ 17200, 17500.) "[T]o state a claim under either the [Unfair Competition Law] or the false advertising law, based on false advertising . . . practices, 'it is necessary only to show that "members of the public are likely to be deceived."'" (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 951, quoting *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211 (*Committee on Children's Television*), superseded by statute on other grounds as stated in *Branick v. Downey Savings & Loan Assn.* (2006) 39

---

4 The Unfair Competition Law also defines unfair competition to include business practices that are "unlawful" and "unfair." (*Id.*, § 17200). Although plaintiffs initially proceeded under all three prongs, they now characterize the $1 promotional rate solely as a "fraudulent" business practice.

Cal.4th 235, 242; see generally, *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370 [noting substantive overlap of two claims]; *Tobacco II, supra*, 46 Cal.4th at p. 312, fn. 8 [same].)

Under the Unfair Competition Law and the false advertising law, plaintiffs may seek (1) injunctive relief and/or (2) restitution. (Bus. & Prof. Code, §§ 17203, 17535; see *Korea Supply Co v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144.) These forms of relief are "wholly independent remedies" (*Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 790), and each requires a different showing. While a party seeking injunctive relief need only prove that "'members of the public are likely to be deceived'" by the defendant's false advertisements (*Committee on Children's Television, supra*, 35 Cal.3d at p. 211), a party seeking restitution must also prove that the defendant "may have . . . acquired" "money or property" "by means of [its] unfair competition" or false advertising. (Bus. & Prof. Code, §§ 17203, 17535; *Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 228 (*Tucker*) ["'[I]n order to obtain classwide restitution under the [Unfair Competition Law], plaintiffs need establish not only a misrepresentation that was likely to deceive . . . but also the existence of a "measurable amount" of restitution, supported by the evidence.'"]; *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 698 [same]).

Consequently, where plaintiffs seek to certify a class aimed solely at recovering restitution under the Unfair Competition Law or false advertising law and define the members of the class as anyone who purchased the good or service to which the advertisement pertains, those plaintiffs must prove that (1) the class members were exposed to the advertisement, (2) the advertisement was deceptive, and (3) the deception was material.

11

Unless the class members were *exposed* to the advertisement, they could not have been deceived by it and the defendant responsible for that advertisement could not have acquired the class members' "money or property" by means of that allegedly deceptive advertisement. (*Pfizer Inc. v. Superior Court* (2010) 182 Cal.App.4th 622, 631 (*Pfizer*) ["one who was not exposed to the alleged misrepresentations . . . could not possibly have lost money or property as a result of the unfair competition"]; *Cohen v. DIRECTV, Inc.* (2009) 178 Cal.App.4th 966, 980 (*Cohen*) [no relief if the "consumer . . . was never exposed in any way to an allegedly wrongful business practice"]; *Tucker*, *supra*, 208 Cal.App.4th at p. 229 [exposure required]; *Davis-Miller*, *supra*, 201 Cal.App.4th at pp. 124-125 [same]; *Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 945-946 (*Knapp*) [same]; *American Honda Motor Co., Inc. v. Superior Court* (2011) 199 Cal.App.4th 1367, 1379 [same] (*American Honda*); *Fairbanks v. Farmers New World Life Ins. Co.* (2011) 197 Cal.App.4th 544, 562 [same] (*Fairbanks*); *Sevidal v. Target Corp.* (2010) 189 Cal.App.4th 905, 926 (*Sevidal*) [same]; see also, *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 327-328 (*Kwikset*) [class valid at demurrer stage based on allegation that "plaintiffs saw . . . the labels"]; *Weinstat v. Dentsply Internat., Inc.* (2010) 180 Cal.App.4th 1213, 1219-1220 (*Weinstat*) [class valid where consumers all exposed to the misrepresentation]; *McAdams v. Monier, Inc.* (2010) 182 Cal.App.4th 174, 179 [re-defining class to include only those consumers who had "been exposed" to the deceptive representation].)

Unless the advertisement is deceptive, the advertisement does not constitute a "fraudulent" business practice or false

advertising. (*In re Ins. Installment Fee Cases* (2012) 211 Cal.App.4th 1395, 1417 [no "fraudulent" business practice where ad is neither "misleading [n]or deceptive"]; *Tucker*, *supra*, 208 Cal.App.4th at p. 229 [no "fraudulent" business practice where consumers are aware of facts omitted from advertisement].)

However, once the plaintiffs establish that the class has been exposed to a deceptive advertisement, the sole remaining element is proof that the falsity or omission that makes the advertisement deceptive is "material," at least when plaintiffs define the class as those who have purchased the good or service to which the advertisement pertains. In this instance, proof that the advertisement is material *itself* satisfies the element of reliance. That is because a falsity or omission in an advertisement is "material" if """a reasonable [person] would attach importance to""" that falsity or omission """in determining his [or her] choice of action in the transaction in question.""" (*Kwikset*, *supra*, 51 Cal.4th at p. 332; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 977.) And if a reasonable person would "attach importance" to the falsity or omission, courts can safely and logically "infer" or "presume" that "members of the public" (from which the putative class members are drawn) will rely on that falsity or omission in deciding whether to purchase the good or service. (*Tobacco II*, *supra*, 46 Cal.4th at p. 327 ["a presumption, or at least an inference, of reliance arises whenever there is a showing that a misrepresentation was material"]; *Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 229 ["actual reliance, or causation, is inferred from the misrepresentation of a material fact"]; *Tucker*, *supra*, 208 Cal.App.4th at p. 226 [noting "inference" of reliance]; *Keilholtz v. Lennox Hearth Prods. Inc.* (N.D. Cal. 2010) 268

13

F.R.D. 330, 342 (*Keilholtz*) [same].) And in this instance, defining the class as only those persons who purchased the good or service at issue *itself* satisfies the element of injury—that is, the outlay of money for that good or service—as to all class members. (E.g., *Pfizer*, *supra*, 182 Cal.App.4th at p. 626 [so defining a class]; *American Honda, supra*, 199 Cal.App.4th at p. 1379 [same]; *Steroid Hormone Product Cases* (2010) 181 Cal.App.4th 145, 149 [same] (*Steroid*); *Kaldenbach*, *supra*, 178 Cal.App.4th at p. 836 [same]; *Krueger v. Wyeth, Inc.* (S.D. Cal. 2011) 2011 U.S. Dist. LEXIS 154472, \*2 (*Krueger*) [same].)

**B.** ***Are the elements susceptible of common proof?***

The trial court found the elements of exposure and deceptiveness were not susceptible of common proof. We examine each.

    1.    *Exposure*

Common issues do not predominate (and class certification is properly denied) when the evidence demonstrates variations in how—and, critically, *whether*—class members were exposed to an allegedly deceptive advertisement. (*Stearns v. Ticketmaster Corp.* (9th Cir. 2011) 655 F.3d 1013, 1020 (*Stearns*) [where class members "exposed to quite disparate information" from defendant, "it might well be that there was no cohesion among the [class] members"]; see *Kaldenbach*, *supra*, 178 Cal.App.4th at pp. 846, 848 [variations in "what was actually said or demonstrated in any individual sales transaction"; common issues do not predominate]; cf. *Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1289-1292 [defendant made identical representations or nondisclosures to all class members; common issues predominate], superseded on other grounds by Proposition 64 as stated in *Steroid*, *supra*, 181

14

Cal.App.4th at p. 154; *Steroid*, at p. 149 [defendant omitted information from labels on every purchased bottle of steroids; common issues predominate].)

Substantial evidence supports the trial court's finding that common issues of fact do not predominate on the issue of exposure because "members of the class stand in a myriad of different positions" vis-à-vis how and whether they were exposed to Public Storage's $1 promotional rate. (*Cohen, supra*, 178 Cal.App.4th at p. 979.) Because plaintiffs' proposed class is defined by who obtained the $1 rate (rather than who saw or heard Public Storage's advertisements for that rate), and because Public Storage applied the $1 rate to particular storage units whether or not the renters of those units invoked that rate (presumably because they had been exposed to an ad for that rate), membership in the class is not a proxy for exposure to the advertisement. Nor was exposure to the advertisement a practical inevitability, as the evidence showed that people could make in-person reservations without seeing a banner advertising the $1 promotional rate and that people could make online or phone reservations without ever seeing advertisements for that rate on television, online or elsewhere. Given this variation in exposure, the trial court had ample basis to fear it would be "required to litigate numerous and substantial questions determining . . . individual [class members'] right to recover." (*Duran, supra*, 59 Cal.4th at p. 931.)

2.    *Deceptiveness*

Common issues do not predominate (and class certification is properly denied) when the evidence demonstrates a "lack of commonality" or "uniform[ity]" in the content of an allegedly deceptive advertisement, particularly where some of the

15

advertisements made full disclosures and were accordingly not deceptive. (*Fairbanks*, *supra*, 197 Cal.App.4th at p. 562 ["a class action cannot proceed for a fraudulent business practice under the [Unfair Competition Law] when it cannot be established that the defendant engaged in uniform conduct likely to mislead the entire class."]; see *Knapp*, *supra*, 195 Cal.App.4th at p. 943 [no predominance of common issues where "alleged misrepresentations were not uniformly made to proposed class members"]; *Kaldenbach*, *supra*, 178 Cal.App.4th at p. 846 [no predominance of common issues where "what was actually said or demonstrated" was "not uniform"]; *Pfizer*, *supra*, 182 Cal.App.4th at pp. 631-632 [no predominance of common issues where allegedly deceptive label was not on all bottles of mouthwash sold to class members]; *American Honda*, *supra*, 199 Cal.App.4th at p. 1379 [no predominance of common issues where "representations made to class members" were "variable"]; cf. *Weinstat*, *supra*, 180 Cal.App.4th at pp. 1219-1220 [predominance of common issues where each product sold by the defendant contained the directions alleged to be deceptive].)

Substantial evidence supports the trial court's finding that common issues of fact do not predominate on the issue of deception because Public Storage's advertisements for its $1 promotional rate varied over time and across different media, and not all of those various ads contained the falsities and omissions that plaintiffs claim render those ads deceptive. Several of the advertisements touting the $1 promotional rate—including those on various banners, on Public Storage's website, and on the Internet—expressly informed consumers that other "fees," "taxes" "restrictions" or "deposits" applied, and thus that the charge for the first month would not be only $1. Suffice it to say, an

16

advertisement is not deceptive for omitting certain information if it actually discloses that information. (Accord, *Freeman v. Time, Inc.* (9th Cir. 1995) 68 F.3d 285, 289 (*Freeman*) ["qualifying language" in an advertisement may negate deceptiveness]; *Sperling v. Stein Mart, Inc.* (C.D. Cal. 2016) 2016 U.S. Dist. LEXIS 111227, *20, *24 (*Sperling*) [same].)

The evidence also indicates that even those advertisements that did not on their face mention other "fees" or "taxes" might still not be deceptive because Public Storage disclosed the charge and requirements plaintiffs allege were deceptively omitted from those ads before class members rented their units. Public Storage disclosed the new account fee to many class members before they ever drove down to a Public Storage facility: Any person who received a confirmatory email (as did 57 percent of the class) or who reserved a storage unit online (as did 40 percent of the class) were informed that they were being charged the new account fee. Public Storage disclosed its requirement that each renter use a lock on its website, and the purchase of a *Public Storage* lock was not mandatory, even though all three named plaintiffs bought Public Storage locks, because (1) 31 percent of the putative class did not buy one (and hence did not *have to buy* one) and (2) the script Public Storage employees were to use required them to explain that renters "can use [their] own" lock. Public Storage disclosed its requirement that each renter have insurance in the rental agreement, and the purchase of a *Public Storage* insurance policy was not mandatory, even though all three named plaintiffs bought a Public Storage policy at least once, because (1) 13.3 percent of the putative class did not purchase such a policy (including Mueller on one occasion), (2) the insurance rider itself expressly indicated that Public

17

Storage's insurance policy was optional, and (3) the script Public Storage employees were to use required them to explain that renters can use their own insurance policy. And Public Storage's practice of sending new renters a bill on the first day of the next calendar month did not render the $1 promotional rate advertisements deceptive because Public Storage (1) pro-rated the next month's rent bill to charge renters only $1 for however many days of the first month spilled into the next month; and (2) imposed no fee if the renter opted not to pay the next month's rent bill until the *following* month.

Given this variation in disclosures that directly affect whether the allegedly deceptive advertisements were, in fact, deceptive, the trial court also had ample basis to fear it would be "required to litigate numerous and substantial questions determining . . . individual [class members'] right to recover" on the issue of deceptiveness. (*Duran*, *supra*, 59 Cal.4th at p. 931.)

## III. Plaintiffs' Counter-Arguments

### A. *The Effect of* Tobacco II

Plaintiffs argue that the trial court was wrong to require them to prove that exposure and deceptiveness are susceptible of common proof. For support, they cite our Supreme Court's decision in *Tobacco II*, *supra*, 46 Cal.4th 298. Plaintiffs assert that the trial court relied upon improper criteria in denying class certification by insisting that "each class member . . . have seen the same or substantially the same advertising copy" because *Tobacco II* stated that a "plaintiff is not required to plead with an unrealistic degree of specificity that [he] relied on particular advertisements or statements" when there is a "long-term advertising campaign." (*Tobacco II*, at p. 328; *see also id*. at p. 306.) Because Public Storage's $1 promotional rate campaign is a

36-year-old ad campaign, plaintiffs reason, "[i]t is enough that [its] advertising campaign . . . presents a pervasive common theme that misleads." Plaintiffs further assert that the trial court erred in requiring proof of deception because *Tobacco II*, drawing on earlier cases, reaffirmed that "'relief under the [Unfair Competition Law] is available without individualized proof of deception, reliance and injury.' [Citation.]" (*Id.* at pp. 320 & fn. 14, 326; see also *Committee on Children's Television*, *supra*, 35 Cal.3d at p. 211; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1267.)

We disagree with plaintiffs that *Tobacco II* abrogated the requirements of exposure and deception that, as described above, must be proven when plaintiffs seek to recover restitution under the Unfair Competition Law and false advertising law.

To begin, *Tobacco II*'s holding is inapt. *Tobacco II* addressed the standing requirements of *class representatives* in class actions under the Unfair Competition Law and false advertising law after the enactment of Proposition 64. (*Tobacco II*, *supra*, 46 Cal.4th at p. 306; see also, Bus. & Prof. Code, §§ 17204, 17535.) The court ruled that Proposition 64 limits class representatives to those persons who have actually relied on an unfair business practice (or false advertisement) *and* "person[ally] . . . suffered" economic harm due to that reliance. (*Tobacco II*, at p. 330; *Kwikset*, *supra*, 51 Cal.4th at pp. 321, 323.) The court further ruled that these additional standing requirements apply *only* to class representatives, not to the members of the class. (*Tobacco II*, at p. 306.) Because *Tobacco II* deals with the standing requirements for class representatives, courts have repeatedly "concluded *Tobacco II* is 'irrelevant' to a class certification motion 'because the issue of "standing" simply

19

is not the same thing as the issue of "commonality."'" (*Kizer v. Tristar Risk Management* (2017) 13 Cal.App.5th 830, 849; *Cohen, supra*, 178 Cal.App.4th at p. 981; *Davis-Miller, supra*, 201 Cal.App.4th at p. 124; *Knapp, supra*, 195 Cal.App.4th at p. 945.)

More to the point, even if we ignore *Tobacco II*'s context and focus on the language plaintiffs cite, that language does not do away with the requirement that class members be exposed to an allegedly deceptive advertisement and that the advertisement be deceptive.

*Tobacco II*'s acknowledgement that a plaintiff need not "plead with an unrealistic degree of specificity" that he or she "relied on particular advertisements or statements" within a "long-term advertising campaign" does no more than excuse a plaintiff who was exposed to a series of deceptive advertisements from having to spell out *which deceptive ad(s)* he actually saw or heard. This language does not purport to excuse a plaintiff from having to prove that he or she was actually exposed to *at least one* deceptive advertisement. Contrary to what plaintiffs assert, the trial court did not insist that every class member "see[] the same or substantially the same advertising copy." Instead, the court found not all class members had been exposed to Public Storage's $1 promotional rate advertisements, and that this variation in exposure meant that individual issues predominated and counseled against class certification. This conclusion is consistent with *Tobacco II*.

The statement in *Tobacco II* and prior cases that relief is available under the Unfair Competition Law and false advertising law "without individualized proof of deception, reliance and injury" does no more than reaffirm that the focus of both the Unfair Competition Law and false advertisement law is

20

the "reasonable consumer" and whether the content of the challenged advertisement is "likely to deceive" that "reasonable consumer" (*Vioxx*, *supra*, 180 Cal.App.4th at p. 130; *Fletcher*, *supra*, 23 Cal.3d at p. 451), such that there is no need for plaintiffs to prove that "individual" class members were *actually, subjectively* deceived or *actually, subjectively* relied on a deceptive advertisement (*Fletcher*, at p. 451 [disclaiming need to prove "the individual's lack of knowledge of the fraudulent practice in each transaction"]; *Davis-Miller*, *supra*, 201 Cal.App.4th at p. 121 ["A representative plaintiff need not prove that members of the public were actually deceived by the practice, relied on the practice, or suffered damages."]; *Pfizer*, *supra*, 182 Cal.App.4th at p. 630 [same]; *Prata v. Superior Court* (2001) 91 Cal.App.4th 1128, 1145 [same]).  Indeed, *Tobacco II* would have been an especially poor vehicle for dispensing with the requirement of having to prove that class members were exposed to a deceptive advertisement because the class in *Tobacco II* was *defined* as persons who were exposed to the cigarette industry's deceptive ads at issue in that case.  (*Tobacco II*, *supra*, 46 Cal.4th at p. 324 [so noting].)

Two further reasons counsel against reading *Tobacco II*'s language as abrogating the requirements that plaintiffs seeking restitutionary class relief establish that class members were exposed to deceptive advertisements.  First, doing so would allow class members to recover restitution from a defendant even if they have never been exposed to its deceptive advertising.  While the Unfair Competition Law and false advertising law authorize restitution for money or property "which may have been acquired" by means of a fraudulent business practice or deceptive advertisement (Bus. & Prof. Code, §§ 17203, 17535), they do not

21

authorize restitution for money or property *definitively not acquired* through such means; to so hold is to render this language "meaningless." (*Sevidal*, *supra*, 189 Cal.App.4th at p. 924; *Vioxx*, *supra*, 180 Cal.App.4th at p. 131 ["the 'may have been acquired' language . . . is not so broad as to allow recovery without any evidentiary support"].)  Second, reading *Tobacco II*'s language as overriding the requirement to show exposure and deception would contradict the solid wall of precedent, cited above, that holds to the contrary.

### B. *Challenges to the susceptibility of common proof*

Plaintiffs assert that Public Storage's advertisements are uniformly deceptive, and hence that the trial court erred in finding that the issue of deceptiveness was not susceptible of common proof.  Plaintiffs make two specific contentions.  First, they contend that the $1 promotional rate advertisements that refer to "fees," "taxes," "restrictions" or "deposits" do so in a footnoted asterisk, and that such an oblique disclosure does not constitute a disclosure that cures the more prominent promise of a $1 charge.  For support, they cite *Brady v. Bayer Corp.* (2018) 26 Cal.App.5th 1156 (*Brady*) and Title 16, Code of Federal Regulations, section 251.1.  Second, they contend that any post-advertisement disclosures of the new account fee as well as the need to have a lock and insurance (and to buy a Public Storage lock and insurance) cannot cure the omission of this information from the advertisement, citing *Veera v. Banana Republic, LLC* (2016) 6 Cal.App.5th 907 (*Veera*).

Plaintiffs' assertions do not undermine the trial court's denial of class certification.

To begin, these assertions do not speak to the absence of common proof of exposure, which is an independent and sufficient

basis to conclude that common issues do not predominate (and hence that the class should not be certified).

Further, plaintiffs' authority does not render Public Storage's $1 promotional rate advertisements universally deceptive (and hence susceptible of common proof). The federal regulation addresses when ads for "free" goods or services are deceptive under federal law, and is for that reason doubly irrelevant. *Brady* holds that disclosures made in "miniscule" "print" on a product's back label do not cure omissions on its front label. (*Brady*, *supra*, 26 Cal.App.5th at p. 1159.) We question whether *Brady* governs here, where Public Storage's additional disclosures are only a few words long and make clear that additional "fees" and "taxes" may apply, where those disclosures are on the same banner or page as the $1 promotional rate, and where many of the them also point the viewer to Public Storage's website where the disclosures are spelled out in detail. (Accord, *Freeman*, *supra*, 68 F.3d at p. 289; *Sperling*, *supra*, 2016 U.S. Dist. LEXIS 111227, at *20, *24; cf. *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.* (S.D.N.Y. 1981) 509 F. Supp. 1036, 1044 ["small-type footnote" with lots of text connected to an asterisk may be "insufficient" when heading is "prominent"].)

But even if we assume for the sake of argument that *Brady* means that Public Storage's advertisements with footnotes warning of additional charges are still deceptive, this still does not render *all* of Public Storage's advertisements deceptive because Public Storage in many instances went on to disclose the additional costs *after* prospective customers saw the ads but before they signed a lease contract. Plaintiffs respond that *Veera* renders all post-advertising disclosures ineffective, but that is not what *Veera* holds. *Veera* held that a post-advertisement

disclosure was ineffective where the disclosure was made at a time when the "consumer" was "invested in the decision to buy and swept up in the momentum of events" (in *Veera* itself, when the plaintiff learned of the disclosure at the counter after standing in line to buy the product). (*Veera, supra*, 6 Cal.App.5th at p. 921.) Here, however, 57 percent of the class received emails confirming the new account fee upon reserving a storage unit and before traveling to the facility to sign a lease, other putative class members learned about the lock requirement from the website, and other putative class members learned about the insurance requirement before they executed the rental contract. In short, substantial evidence continues to support the trial court's finding that common issues do not predominate on the question of whether the ads that class members saw were deceptive.

C. *Plaintiffs' remaining arguments*

Plaintiffs make what boil down to three further arguments assailing the trial court's reasoning.

First, they argue that several federal cases support their position that *Tobacco II, supra*, 46 Cal.4th 298 eliminates any need to establish that class members seeking restitution were exposed to a deceptive advertisement. However, none of those cases so hold. Half involve classes comprised of consumers who were uniformly exposed to deceptive advertisements or labels. (*Krueger, supra*, 2011 U.S. Dist. LEXIS 154472, *33, *38; *Pratt v. Whole Foods Mkt. Cal., Inc.* (N.D. Cal. 2014) 2014 U.S. Dist. LEXIS 46409, *28.) The other half do not involve deceptive advertising or labeling at all. (*Keilholtz, supra*, 268 F.R.D. at p. 342 [class action deals with defendant-manufacturer's failure to disclose its product's hidden defects]; *Menagerie Prods. v. Citysearch* (C.D. Cal. 2009) 2009 U.S. Dist. LEXIS 108768 [class

24

action deals with defendant's failure to reveal to its customers its methodology for tracking compensable "clicks" for internet ads].)

Second, plaintiffs cite Ninth Circuit authority that reads California law as "creat[ing] what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury; [and] restitution is the remedy." (*Stearns*, *supra*, 655 F.3d at p. 1021, fn. 13; see also *Pulaski & Middleman, LLC v. Google, Inc.* (9th Cir. 2015) 802 F.3d 979, 986 [quoting *Stearns* on this point].) To the extent plaintiffs read this language as stating that California law does not require a showing that consumers be exposed to a deceptive advertisement before "bit[ing]," that reading is inconsistent with the case's language (which expressly requires that the "person" "see" the "tainted" "bait") and is inconsistent with California law set forth in this opinion.

Lastly, plaintiffs fall back on the maxim that every wrong must have a remedy (Civ. Code, § 3523), and urge that the trial court's denial of class certification has effectively denied them a remedy because their individual losses are too small to feasibly bring suit individually. We decline to employ that maxim as a basis for certifying a class notwithstanding the predominance of individual issues because doing so would confer a remedy upon those class members who have not been wronged and therefore have no right to restitutionary relief. This not only turns the maxim on its head, but also impermissibly turns the Unfair Competition Law and false advertising law into fulcrums for "creat[ing] substantive rights" that do not otherwise exist (*The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1526).

## DISPOSITION

The order is affirmed.  Public Storage is entitled to its costs on appeal.

**CERTIFIED FOR PUBLICATION**.


_____, J.
HOFFSTADT

We concur:


_____, P.J.
LUI


_____, J.
ASHMANN-GERST

26