Filed 8/14/14

*CERTIFIED FOR PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| DANIEL HENDERSHOT et al., | B247730 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC485401) |
| v. | |
| READY TO ROLL TRANSPORTATION, INC. et al., | |
| Defendants and Respondents. | |


APPEAL from an order of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Reversed and remanded.

The Gillam Law Firm and Carol L. Gillam for Plaintiffs and Appellants.

Fraser, Watson & Croutch, Todd E. Croutch and Daniel K. Dik for Defendants and Respondents.

The plaintiffs Daniel Hendershot et al.[1] appeal the trial court's order denying their motion for class certification. The trial court found that the proposed class was not sufficiently numerous because a majority of the putative class members had entered into releases and arbitration agreements with the defendant Ready to Roll Transportation, Inc.

We find that the order must be reversed on the following grounds: (1) the court's analysis of the "numerosity" factor was incorrect; (2) the court improperly considered the merits of the defendant's affirmative defenses; and (3) the court denied the plaintiffs due process by failing to grant them an adequate opportunity to perform discovery on and brief certification issues.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Complaint*

On May 24, 2012, the plaintiffs filed a putative class action against the defendant for failure to pay overtime wages, among other causes of action. The complaint alleged that the putative class members were non-exempt employees who chauffeured vehicles for the defendant, and that the defendant failed to compensate them for periods when they were required to remain on-call in between trips transporting clients. The plaintiffs amended the complaint twice and the defendant filed an answer. The second amended complaint defined the class as "[a]ll non-exempt, chauffeur employees who worked 'on-call time' without compensation, who are or who have been employed by

---

[1] The named plaintiffs are Daniel Hendershot, Alfred Salas and Steven Whitehead.

DEFENDANT[] in the State of California at any time during the four years prior to the date of the filing of this action."

2.    *The Plaintiffs Serve Discovery and Agree to Grant the Defendant An Extension*

On June 28, 2012, the plaintiffs propounded requests for production, requests for admissions and a form interrogatory on the defendant.   On July 27, 2012, the defendant asked for a one-month extension to respond to the discovery.  The plaintiffs conditioned such an extension on the defendant's agreement that it would provide (1) "good faith, substantive responses, and not simply objections" as well as (2) "the contact information for all putative class members."  The defendant's counsel "agree[d] to the proposal" and said it would employ a "[*Belaire*] notice procedure" to provide the plaintiffs' counsel with contact information for the class.[2]  The defendant's counsel committed to providing the plaintiffs' counsel with a draft of a *Belaire* notice within a week.

3.    *The Defendant Does Not Comply With the Discovery Agreement*

The defendant thereafter obtained new counsel.  On September 7, 2012, the defendant's new counsel acknowledged the parties' agreement regarding the discovery extension but asked for additional time to "review the [*Belaire*] Notice [and] communicate with my client about the details."  The plaintiffs' counsel agreed to the

---

[2]    In *Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554, the court of appeal approved the use of an "opt-out notice" to putative class members whereby these members were informed that the plaintiffs' counsel would receive their contact information unless they chose to object to such a disclosure.

extended timeframe, and the defendant's counsel agreed to finalize the *Belaire* notice by September 26, 2012.

However, the defendant's counsel did not send the plaintiffs' counsel a draft *Belaire* notice. On September 18, 21 and 25, 2012, the plaintiffs' counsel contacted the defendant's counsel by phone and email seeking to determine if the defendant had any revisions to the draft *Belaire* notice. The defendant's counsel did not respond. During this time, the defendant's chief executive officer, Gale Ricketts, met individually with 29 putative class members and obtained their signatures on agreements releasing any and all claims they might have against the defendant.

4.     *The Plaintiffs Move to Compel Further Responses*

The defendant served its discovery responses on the plaintiffs in September. On October 29, 2012, the plaintiffs moved to compel further responses to their discovery requests, including the request seeking all documents pertaining to defenses the defendant intended to assert in this action. The plaintiffs argued that, in spite of the defendant's prior agreement to provide substantive responses to the discovery in exchange for an extension, the defendant had refused to respond to over half of the requests for admissions and the related Form Interrogatory 217.1, had asserted boilerplate objections to certain requests for production, and had only produced a portion of responsive documents. On December 11, 2012, the court granted the motions. The defendant was ordered "to file supplemental responses as prayed for" by December 21, 2012, and to pay the plaintiffs $10,000 in attorney's fees. The defendant

did, at some time thereafter, serve supplemental responses and produce a list of the putative class members to a third party administrator.

5.     *The Plaintiffs Move for a Continuance*

On January 25, 2013, the plaintiffs moved ex parte with the defendant's consent to "re-set[] the due date to file a Motion for Class Certification in this case and adjust related deadlines."  The court had set a deadline for filing the motion of February 14, 2012, and the plaintiffs requested an additional two months to prepare on the grounds that there had been "a delay of over a month in obtaining the Putative Class List from the Third Party Administrator," "significant delays in obtaining documents in discovery" including "a large production of many thousands of pages [which] was obtained by Plaintiffs just recently from Defendant," and "[c]ertain witnesses important for the Motion are unavailable for deposition in the immediate term . . . . "  The court denied the request.

6.     *The Defendant's CEO Does Not Appear for Her Deposition*

The parties' counsel agreed to set Ricketts' deposition for January 31, 2013, and, accordingly, the plaintiffs' counsel noticed the deposition for that date.  However, on January 30, 2013, the defendant's counsel informed the plaintiffs' counsel that Ricketts would not appear for her deposition because she had, for some unexplained reason, traveled out of state.  The plaintiffs' counsel objected on the grounds that the parties' counsel had previously agreed to this date and the deposition had been properly noticed.  However, Ricketts did not appear for the deposition.

5

7.     *The Defendant Produces the Releases and Arbitration Agreements*

On February 1, 2013, the defendant produced 36 settlement agreements with putative class members, 29 of which had been signed in September 2012. The settlement agreements provided that certain putative class members "release[d]" the defendant "from any and all liability . . . that Employee now has or which may hereafter accrue against the [defendant] . . . ."[3] Several of the releases were signed in exchange for $5.00.

8.     *The Plaintiffs Move for Class Certification*

On February 14, 2013, the plaintiffs filed their motion for class certification in which they argued that the proposed class was sufficiently numerous because there were at least 53 potential members of the class. One week later, the defendant produced 24 arbitration agreements and two additional settlement agreements with putative class members. All of the arbitration agreements had been signed in 2012, prior to the due date for the defendant's further production pursuant to the court's order granting the motion to compel. The agreements provided that "[a]ny controversy, dispute or claim between any employee and the [defendant] . . . shall be settled by binding arbitration, at the request of either party . . . ."

On February 26, 2013, the defendant filed its opposition to the class certification motion. In opposition, the defendant argued that the putative class was not sufficiently numerous because the majority of the proposed class had settled their claims and/or

---

**3**     We note that this agreement is not entirely coherent: it appears to be releasing the defendant from the *employee's* liability.

agreed to arbitrate their disputes with the defendant. The defendant also argued that "most employee[s'] settlement of all their claims, agreement to arbitration, or both . . . demonstrate that there will be various factual issues, and in particular defenses, that are not typical of the entire purported class, and . . . class representatives."

In reply, the plaintiffs argued that (1) the defendant had waived any defense based on the releases or arbitration agreements by not pleading it in its answer; (2) the defendant should not be permitted to assert defenses based on documents it withheld from discovery; and (3) the releases and arbitration agreements were unenforceable. The plaintiffs again asked the court to continue the hearing to allow them to conduct further discovery.

9.    *The Court Denies Class Certification*

On March 12, 2013, the court denied class certification on the grounds that the plaintiffs had failed to satisfy the numerosity requirement. The court's order provided that: "Defendant has produced compelling evidence that, at most, there would be only nine plaintiffs in this case: the three plaintiffs and six other drivers. Of the remainder of the 53 drivers, thirty-eight have already settled their claims with defendant; twenty-four have agreed to arbitrate any claims against defendant; and nineteen drivers both settled and agreed to arbitrate. . . .[4] [¶] Plaintiffs have provided no basis for asserting that they have standing to attack the settlement agreements signed by their fellow drivers. . . . [¶] Plaintiffs also contend that these settlement agreements were

---

[4]    According to these numbers, only 43 drivers had signed a release and/or arbitration agreement and, thus, there were ten – not nine – remaining plaintiffs in the case.

7

produced 'late,' and that plaintiffs were not able to depose Ms. Ricketts, the owner of defendant. But again there is an inadequate record as to any improper conduct by Ricketts or that plaintiffs have suffered any real prejudice. . . . [¶] Defendant was not required to have pleaded an 'arbitration defense' prior to this hearing . . . [¶] the Motion for Class Certification . . . is Denied."

That same day, plaintiffs filed a request for permission to file supplemental briefing on the issue of standing raised *sua sponte* by the court at the hearing. The record does not indicate that the court ruled on the request. The plaintiffs timely appealed.

## *CONTENTIONS*

The plaintiffs contend the trial court erred in finding that the proposed class was not sufficiently numerous. The plaintiffs also contend the court erred in considering the defendant's late production and in refusing to continue the class certification hearing to allow the plaintiffs to conduct further discovery.

## *DISCUSSION*

1. *Class Certification*

Class actions are authorized under Code of Civil Procedure section 382 whenever "the question [in a case] is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." Under California law, a party seeking certification of a class must demonstrate three things: "[1] the existence of an ascertainable and sufficiently numerous class, [2] a well-defined community of interest, and [3] substantial benefits

8

from certification that render proceeding as a class superior to the alternatives." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).) "In turn, the 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089 (*Fireside*).)

"The question of class certification is essentially procedural and does not involve the legal or factual merits of the action. [Citation.]" (*Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 938.) "Trial courts have discretion in granting or denying motions for class certification because they are well situated to evaluate the efficiencies and practicalities of permitting a class action. [Citation.] Despite this grant of discretion, appellate review of orders denying class certification differs from ordinary appellate review. Under ordinary appellate review, we do not address the trial court's reasoning and consider only whether the result was correct. [Citation.] But when denying class certification, the trial court must state its reasons, and we must review those reasons for correctness. [Citation.]" (*Id.* at p. 939.)

"A grant or denial of class certification that rests in part on an erroneous legal assumption is error; without regard to whether such a certification might on other grounds be proper, it cannot stand." (*Brinker, supra,* 53 Cal.4th at p. 1050.) " 'In other words, we review only the reasons given by the trial court for denial of class certification, and ignore any other grounds that might support denial.' " (*Corbett v.*

9

*Superior Court* (2002) 101 Cal.App.4th 649, 658; *Clothesrigger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605, 611-612 [In reviewing an order denying class certification,"[t]he right result is an inadequate substitute for an incorrect process."].)

    2.    *Numerosity*

The parties dispute the trial court's finding that the proposed class was not sufficiently numerous. To be certified, a class must be "numerous" in size such that "it is impracticable to bring them all before the court." (Code of Civ. Proc., § 382.) "The requirement of Code of Civil Procedure section 382 that there be 'many' parties to a class action suit is indefinite and has been construed liberally. . . . No set number is required as a matter of law for the maintenance of a class action. [Citation.] Thus, our Supreme Court has upheld a class representing the 10 beneficiaries of a trust in an action for removal of the trustees. [Citation.]" (*Rose v. City of Hayward* (1981) 126 Cal.App.3d 926, 934.)

"The ultimate issue in evaluating this factor is whether the class is too large to make joinder practicable . . . ."[5] (*Celano v. Marriott Intern., Inc.* (N.D. Cal. 2007) 242 F.R.D. 544, 549.) " '[I]mpracticality' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class. [Citation.]" (*Harris v. Palm Springs Alpine Estates, Inc.* (9th Cir. 1964) 329 F.2d 909, 913-914.) "The

---

[5] "It is well established that in the absence of relevant state precedents trial courts are urged to follow the procedures prescribed in rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) for conducting class actions. [Citation.]" (*Frazier v. City of Richmond* (1986) 184 Cal.App.3d 1491, 1499.) Rule 23 of the Federal Rules of Civil Procedure provides, similar to Code of Civil Procedure section 382, that a class action is proper when "the class is so numerous that joinder of all members is impracticable." (Fed. Rules Civ. Proc., rule 23(a)(1), 28 U.S.C.)

numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." (*General Telephone Co. v. EEOC* (1980) 446 U.S. 318, 330.) "In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." (*Paxton v. Union Nat. Bank* (8th Cir. 1982) 688 F.2d 552, 559-560.)

Here, the second amended complaint defined the proposed class as "[a]ll non-exempt, chauffeur employees who worked 'on-call time' without compensation, who are or who have been employed by DEFENDANT[] in the State of California at any time during the four years prior to the date of the filing of this action." There was no dispute that 53 individuals fell within the class description. The trial court found only that the class was not sufficiently numerous because 44 of those individuals had settled their claims or agreed to arbitrate their claims against the defendant. The trial court's bare conclusion that the remaining nine class members did not constitute a sufficiently numerous class – without any analysis as to the "ultimate issue . . . [of] whether the class is too large to make joinder practicable" – was incomplete. (*Celano v. Marriott Intern., Inc., supra,* 242 F.R.D. at p. 549.) There is no set number required to maintain a class action, and the statutory test is whether a class is so numerous *that* "it is impracticable to bring them all before the court." (Code of Civ. Proc., § 382.)

Furthermore, in finding that only nine individuals could be part of the class, the court improperly ruled on the merits of the defendant's affirmative defenses. Normally, the merits of a case are not considered in deciding class certification. (*Linder v. Thrifty*

11

*Oil Co.* (2000) 23 Cal.4th 429, 439-440 (*Linder*).)  However, the trial court may consider "the case's merits" when considerations of " 'how various claims and defenses relate and may affect the course of the litigation' . . . 'overlap the case's merits.' [Citation.]"[6] (*Brinker, supra,* 53 Cal.4th at p. 1024.)  "[A]ny 'peek' a court takes into the merits at the certification stage must 'be limited to those aspects of the merits that affect the decisions essential' to class certification.  [Citation.]" (*Ibid.*)

Here, the court essentially ruled that the defendant's affirmative defenses based on the releases and arbitration agreements had merit, and thereby determined that the majority of putative class members could not assert claims against the defendant in this action.  However, consideration of those defenses did not "overlap" with the numerosity analysis, which was limited to how many individuals fell within the class definition and whether their joinder was impracticable.  (*Brinker, supra,* 53 Cal.4th at p. 1024.)

Although these defenses may overlap with the determination of whether the class representatives here can adequately represent members who have signed releases and arbitration agreements, or whether those representatives' claims and defenses are typical of those of the class, the trial court did not address these matters.  (See, e.g., *Melong v.*

---

[6] For example, " 'whether the claims or defenses of the representative plaintiffs *are typical* of class claims or defenses' [is] an issue that might necessarily be intertwined with the merits of the case, but which a court considering certification necessarily could and should consider.  [Citations.]" *Fireside, supra,* 40 Cal.4th at p. 1092 (italics added); see also *Walsh v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440, 1450 ["The affirmative defenses of the defendant must also be considered, because a defendant may defeat class certification by showing that an affirmative defense *would raise issues specific to each potential class member and that the issues presented by that defense predominate over common issues.* [Citations.]" (Italics added.))

12

*Micronesian Claims Commission* (D.C. Cir. 1980) 643 F.2d 10, 13 ["[W]hether those proposed class members who have executed releases with [the defendant] may be included within the plaintiffs' proposed classes . . . is not a novel [issue]; it has been addressed often by courts in a variety of cases involving proposed class actions.  In each instance, the court considering the question has concluded that proposed class members who have executed releases can not [sic] be represented by individuals who have not executed a release."].)

Furthermore, as the Supreme Court explained in *Linder*, "[w]hen the substantive theories and claims of a proposed class suit are alleged to be without legal or factual merit, the interests of fairness and efficiency are furthered when the contention is resolved in the context of a formal pleading (demurrer) or motion (judgment on the pleadings, summary judgment, or summary adjudication) that affords proper notice and employs clear standards.  Were we to condone merit-based challenges as part and parcel of the certification process, similar procedural protections would be necessary to ensure that an otherwise certifiable class is not unfairly denied the opportunity to proceed on legitimate claims."[7]  (*Linder, supra,* 23 Cal.4th at pp. 440-441; see, e.g., *Chindarah v. Pick Up Stix, Inc.* (2009) 171 Cal.App.4th 796 [employer cross-claimed against employees who joined class action after signing settlement agreements, and the court

---

[7]    The defendant also has the option of moving to compel arbitration as to putative class members should the class be certified.  (See *Sky Sports, Inc. v. Superior Court* (2011) 201 Cal.App.4th 1363 [holding that, when the named representative has not signed an arbitration agreement with the defendant but putative class members have, the proper time for the defendant to bring a motion to compel arbitration is after the class has been certified.])

properly granted summary judgment on these claims for the employer].) Accordingly, here, the defendant's contention that its defenses disposed of the putative class's claims was improperly resolved as part of the trial court's numerosity analysis.[8]

### 3.   *Violation of the Plaintiffs' Due Process Rights*

The trial court also erred in denying the plaintiffs an adequate opportunity to conduct discovery on and brief issues related to certification. First, the defendant did not provide adequate notice to the plaintiffs that it intended to assert defenses based on a release or arbitration agreement by pleading these defenses in its answer. "[T]he assertion of a release in bar is an affirmative defense to an action (citation) to which the releasor is entitled to respond." (*Raischell & Cottrell, Inc. v. Workmen's Comp. App. Bd.* (1967) 249 Cal.App.2d 991, 997.) Likewise, "an agreement to arbitrate is an affirmative defense" (*Ross v. Blanchard* (1967) 251 Cal.App.2d 739, 742), and "the failure to plead arbitration as an affirmative defense is an act inconsistent with the later assertion of a right to arbitrate." (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 558.)

The defendant's failure to assert these defenses in its answer did not necessarily bar the defendant from asserting them in opposition to the motion for class certification:

---

[8]    The arbitration agreements also did not provide an adequate basis for concluding that certain putative class members could not participate in the class at this stage. The arbitration agreement at issue stated that "[a]ny controversy, dispute or claim between any employee and the [defendant] . . . shall be settled by binding arbitration, *at the request of either party* . . . ." (Emphasis added.) Accordingly, these agreements did not require that the parties arbitrate their disputes until a party requested arbitration. Here, the defendant did not state that it had or would request arbitration of these disputes.

the defendant could have moved at any time to amend its answer to include these defenses, even at this late stage. (*Ramos v. City of Santa Clara* (1973) 35 Cal.App.3d 93, 95 ["A trial court has discretion to allow amendment of any pleading at any stage of the proceedings . . . . "].) However, this principle extends to plaintiffs as well, who should also be allowed to amend their pleading in response to any newly pled defense. (*Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 487 ["courts are bound to apply a policy of great liberality in permitting amendments to the complaint at any stage of the proceedings, up to and including trial . . . '[w]here no prejudice is shown to the adverse party . . . . ' [Citation.]")

The defendant contends that it was not required to plead an affirmative defense that applied only to putative class members because, prior to the certification of the class, those individuals are not parties to this action. However, such a rule would encourage a defendant to oppose class certification by raising, at the last minute, defenses that apply only to putative class members. In addition, as explained by a leading treatise on class actions, "the courts risk confusion and uncertainty when they try to determine the implications of rights of the representative or of class members by focusing on whether absent members are parties or are present as parties for some purposes and not for others. The position that absent class members occupy in class action litigation is *sui generis,* and attempts to analogize to conventional 'party' status are likely to fail. It is more logical for a court faced with a question concerning the rights and duties of absent class members to analyze the issue presented with reference to the goals of representative litigation, not by strained analogies to conventional

15

litigation." (1 Conte et al., Newberg on Class Actions (5th ed. 2011) § 1:5, pp. 15-16, fns. omitted.)

Here, the named representatives cannot properly address issues pertaining to putative class members if the defendant is allowed to oppose certification based on defenses pertaining to those putative class members but is not required to give the plaintiffs advance notice that those defenses are at issue. Rather, the defendant should assert defenses pertaining to the putative class in its answer. Due process requires that the plaintiffs be given an adequate opportunity to conduct discovery on and brief issues related to the defendant's affirmative defenses. Asserting such defenses for the first time in opposition to class certification did not give the plaintiffs such an opportunity.

Second, the trial court abused its discretion in allowing the defendant to rely on the belatedly produced releases and arbitration agreements without continuing the motion or allowing the plaintiffs an opportunity to further brief the issues. "It is an abuse of discretion for a trial court to determine class certification questions before the parties have an opportunity to conduct discovery and present evidence on certification issues." (Cohelan on California Class Actions (2013-2014 ed.) § 6:20.) "Due process requires an order with such significant impact on the viability of a case not be made without a full opportunity to brief the issues and present evidence." (*Carabini v. Superior Court* (1994) 26 Cal.App.4th 239, 244.)

Here, the record establishes that the defendant withheld the releases and arbitration agreements from the plaintiffs despite a court order directing it to produce all documents in support of its defenses. In addition, the defendant did not produce the

16

releases until the eve of the due date for the motion for class certification – and did not produce the arbitration agreements until *after* the motion had been filed – despite having possessed them for many months. This timeline did not give the plaintiffs an adequate opportunity to conduct discovery on these issues or brief them. Furthermore, the record demonstrated that the defendant had also abused the discovery process by breaking its agreement to draft a *Belaire* notice, first by late July 2012, and then again, by late September 2012. The defendant also reneged on its agreement to produce its chief executive officer for a deposition in January 2013. These delays with respect to the plaintiffs' ability to communicate with the proposed class and to obtain discovery directly from the defendant, provided further support for the plaintiffs' argument that they had not had an adequate opportunity to conduct discovery on certification issues.

The plaintiffs now argue that the assertion of these defenses took them by surprise and prejudiced them. It clearly did. The defendant successfully hid the fact that it had managed to procure releases from the majority of the putative class until the eve of the due date for the motion for class certification. In addition, there is no evidence that the plaintiffs were aware of the arbitration agreements between the defendant and certain putative class members until after the plaintiffs had filed their moving papers. The motion for class certification was denied based on these defenses which were asserted for the first time by the defendant in their opposition papers. In addition, the standing argument raised by the court at the hearing disposed of the plaintiffs' challenge to those agreements, yet the court did not grant the plaintiffs' request to provide briefing on this issue. Since the plaintiffs did not have an adequate

opportunity to conduct discovery on or brief issues related to certification, the motion denying class certification must be reversed.

## *DISPOSITION*

The order denying class certification is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.  The plaintiffs are to recover their costs on appeal.

**CERTIFIED FOR PUBLICATION**

                                                                    CROSKEY, J.

WE CONCUR:

        KLEIN, P. J.

        ALDRICH, J.