Filed 11/3/21  Sams v. Sorenson Concrete CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| TRAVIS SAMS, | C088905 |
| Plaintiff and Appellant, | (Super. Ct. No. 17CV02876) |
| v. | |
| SORENSON CONCRETE, INC., | |
| Defendant and Respondent. | |

Travis Sams filed a wage and hour class action suit against his former employer, Sorenson Concrete, Inc. (Sorenson).  In response to the suit, Sorenson entered into agreements with the majority of putative class members to release the claims alleged in the suit for monetary payments.  After 13 months, Sams moved for class certification. The court denied certification in a one-paragraph ruling, reasoning that (1) Sams' "claims are atypical of the proposed putative class because Plaintiff did not sign a release agreement, but the class members he seeks to represent did," and (2) "there are credibility problems sufficient enough to reject the adequacy of Plaintiff acting as class representative."

1

We agree with the trial court that Sams did not meet the typicality requirement of a class representative for the putative class members who signed releases. We also conclude that the trial court did not abuse its discretion in determining that Sams was not an adequate representative because he had "credibility problems," given his criminal history and his inaccurate and incomplete deposition testimony on the subject.

However, the court should have given Sams a reasonable opportunity to amend the complaint to add a class representative, subclass, or both. On that basis, the order of the court is reversed and the case remanded to the trial court for that limited purpose.

## FACTUAL AND PROCEDURAL BACKGROUND

Sorenson is a construction company in Chico, California that specializes in concrete work. Sorenson employs about 30 people on its construction crews. Sams worked as a construction laborer for Sorenson from October 2016 to March 2017.

On October 4, 2017, Sams filed a class action complaint against Sorenson alleging seven causes of action for violations of the Labor Code and one cause of action under Business and Professions Code section 17200. Sams alleged that Sorenson violated the Labor Code and related regulations and wage orders regarding: (1) overtime wages, (2) meal, rest and cool-down breaks, (3) termination wages, (4) work-related expenses, and (5) itemized wage statements. Sams' Business and Professions Code section 17200 claim was predicated on the labor law violations and sought restitution and a permanent injunction.

On November 8, 2018, Sams filed a motion for class certification. A supporting declaration from counsel stated that, excluding members of the Sorenson family, 95 current and former employees had been identified from payroll records produced by Sorenson. The declaration further stated that Sorenson had informed Sams of settlements with putative class members on February 6, 2018, and produced 37 settlement

agreements.[1]  Sams argued that the release agreements did not affect the certification analysis.

On November 26, 2018, Sorenson filed an opposition to the motion.  Sorenson argued, inter alia, that Sams was not an adequate class representative because his claims were atypical of class members who had signed settlement agreements, since he had not. Sorenson supported the opposition with a declaration from its president stating that Sorenson had entered into 81 agreements with former and current employees releasing all claims against Sorenson, including all claims alleged in Sams' suit.  The declaration attached 68 releases entered into from January 2018 to June 2018.  The agreements provided for payments to the releasing employee ranging from $50 to $500.

Sorenson also argued that Sams was not an adequate class representative because of his criminal history.  Counsel for Sorenson submitted a declaration attaching an excerpt from Sams' deposition, in which he testified about an arrest in Sacramento for a crime that led to his serving six months in jail.  Sams could not recall how old he was at the time or the specific nature of the crime.  Sams also testified that he was arrested and convicted for receiving stolen property.  Sams explained that a person who had stolen a generator left it at his house.

In reply, Sams argued that the release agreements did not prevent him from meeting the adequacy and typicality requirements of a class representative.  Sams maintained that typicality only requires that the named plaintiff and class members share the same injury.  Sams requested, however, that "[i]n the event the Court concludes that

---

[1]  California law permits an employer to obtain settlement agreements and releases from putative class members to resolve disputed compensation claims.  (*Chindarah v. Pick Up Stix, Inc.* (2009) 171 Cal.App.4th 796, 802; *Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1592.)

Plaintiff is not adequate or typical because he has not signed a release, Plaintiff should be granted leave to amend the complaint to add a new representative."

In a declaration accompanying the reply, Sams provided details of his arrests and convictions. In 1999, Sams went to the home of his ex-wife and knocked down a man Sams found drinking with her. Sams pleaded guilty to false imprisonment by force and served 20 months. In 2011, Sams agreed to store a generator in his garage as favor to a friend, not knowing the generator was stolen. Sams pleaded guilty to receiving stolen goods and served a year. In 2010, Sams was charged with assault with a deadly weapon and battery causing serious bodily harm, stemming from a fight with a gang member neighbor beating his wife. The charges were dismissed when the neighbor told the prosecutor that he had been drunk and attacked Sams first.[2]

On December 7, 2018, the trial court issued a one-paragraph tentative ruling on Sams' motion for class certification, stating in relevant part: "The Court finds that Plaintiff's claims are atypical of the proposed putative class because Plaintiff did not sign a release agreement, but the class members he seeks to represent did. Essentially, Plaintiff's position is adverse to those he seeks to represent. In addition, [t]he Court finds that there are credibility problems sufficient enough to reject the adequacy of Plaintiff acting as class representative. On those grounds, Plaintiff's Motion for Class Certification is denied."

At a hearing on the same day, the court stated its concern with "the ability of Mr. Sams to represent a large number of people . . . who have entered into settlements and releases when he has not and to represent them when Sorenson asserts an affirmative

---

[2] Sams also provided an online criminal record for "Travis Wayne Sams" obtained from Sacramento County Superior Court, which indicated that felony charges for assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and battery causing serious bodily injury (Pen. Code, § 243, subd. (d)) had been filed on June 2, 2010, and dismissed on June 21, 2010.

defense or a motion to dismiss based on those documents." The court further commented, "[i]t would be hard to see an individual who had entered into a settlement and release suing the individual who had been released or the entity. The first thing they'd have to do is set aside the settlement and release before they could even start towards a class action. So I agree with [defense counsel] on that part. It would be rare, if not impossible."

Defense counsel represented that, since the opposition was filed, others had signed releases, rendering the number of non-signers less than 10. The court responded that the "class could exist" but "there would be a strong affirmative defense as to all but ten."

Sams' counsel requested a "reasonable opportunity to amend the complaint to add another class representative." The court responded, "What would be the basis for me to do that? What is your game plan, let me put it that way? Would you be naming someone who had accepted a settlement and signed the release as a representative, class representative?" Sams' counsel said, "Based on the court's tentative ruling and the discussions we've had here today, yes, I believe that would be the case."

Upon submission by counsel for the parties at the hearing, the trial court stated that it would adopt the tentative ruling.

## DISCUSSION

### Standard of Review

"Class actions are authorized under Code of Civil Procedure section 382 whenever 'the question [in a case] is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' Under California law, a party seeking certification of a class must demonstrate three things: '[1] the existence of an ascertainable and sufficiently numerous class, [2] a well-defined community of interest, and [3] substantial benefits from certification that render proceeding as a class superior to the alternatives.' (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).) 'In turn,

5

the "community of interest requirement embodies three factors:  (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089 (*Fireside*).)" (*Hendershot v. Ready to Roll Transportation, Inc.* (2014) 228 Cal.App.4th 1213, 1221 (*Hendershot*); *Payton v. CSI Electrical Contractors, Inc.* (2018) 27 Cal.App.5th 832, 839-840 (*Payton*).)

"The question of class certification is essentially procedural and does not involve the legal or factual merits of the action.  [Citation.]" (*Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 938 (*Knapp*).)

"On review of a class certification order, an appellate court's inquiry is narrowly circumscribed.  'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion:  "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.]  A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.' " (*Brinker Restaurant Corp. v. Superior Court, supra*, 53 Cal.4th at p. 1022.)

"Despite this grant of discretion, appellate review of orders denying class certification differs from ordinary appellate review.  Under ordinary appellate review, we do not address the trial court's reasoning and consider only whether the result was correct.  [Citation.]  But when denying class certification, the trial court must state its reasons, and we must review those reasons for correctness.  [Citation.]" (*Knapp, supra*, 195 Cal.App.4th at p. 939.)  " ' "In other words, we review only the reasons given by the trial court for denial of class certification, and ignore any other grounds that might support denial." ' " (*Hendershot, supra*, 228 Cal.App.4th at p. 1221.)

*Typicality*

As set forth above, the trial court gave only two reasons for denying class certification. The first was that "Plaintiff's claims are atypical of the proposed putative class because Plaintiff did not sign a release agreement, but the class members he seeks to represent did."

Sams contends "[t]he releases do not affect the class certification analysis (including typicality) because they are an affirmative defense and it is improper to consider the merits of an affirmative defense at the class certification stage." We agree that it is improper to consider the merits of an affirmative defense—in this case, the validity of the releases—on a motion for class certification. (*Hendershot, supra*, 228 Cal.App.4th at p. 1223; *Knapp, supra*, 195 Cal.App.4th at p. 938.) Still, the fact that putative class members have signed releases can affect the typicality of a class representative who has not.

The typicality requirement exists " ' "to assure that the interest of the named representative aligns with the interests of the class. [Citation.]" ' " (*Martinez v. Joe's Crab Shack Holdings* (2014) 231 Cal.App.4th 362, 375.) The test " ' " 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " ' " (*Ibid.*) Denial of class certification is appropriate "when a defense unique to the class representative will be a major focus of the litigation [citation], or when then class representative's ' "interests are antagonistic to or in conflict with the objectives of those [he or she] purports to represent." ' " (*Medrazo v. Honda of North Hollywood* (2008) 166 Cal.App.4th 89, 99.) In determining whether the named plaintiff's claims and defenses are typical of the class, the trial court may consider whether the plaintiff and class members have signed releases. (*Hendershot, supra*, 228 Cal.App.4th at p. 1223.)

There is no published California case on the subject of whether a named plaintiff

7

who has not signed a release has met the typicality requirement for a class that includes members who have. "In the absence of California authority concerning class action issues, ' "California courts may look to the Federal Rules of Civil Procedure . . . and to the federal cases interpreting them [citation]." ' [Citation.]" (*Payton, supra*, 27 Cal.App.5th at p. 850, fn. 5.)

According to the weight of federal authority, named plaintiffs who have not signed releases do not meet the typicality requirement for class members who have. One prominent example is *Melong v. Micronesian Claims Commission* (D.C. Cir. 1980) 643 F.2d 10, in which the court upheld denial of class certification where some putative class members had signed releases but the proposed class representatives had not. The court observed that "[t]he execution of a release does not conclusively bar prosecution of the underlying claim. The release itself may be found to be defective and therefore void. . . . [H]owever, . . . the existence of such releases adds new and significant issues to actions brought on the underlying claims. When the purported class representative has not executed a release and need not establish that the release is defective in his individual case, serious questions are raised concerning the typicality of the class representative's claims and the adequacy of his representation of other class members." (*Id.* at p. 15.) The court concluded that the claims of those who executed releases "must be presented by proper plaintiffs with the proper factual development." (*Id.* at p. 16.)

Other federal courts have come to the same conclusion. (See, e.g., *Javine v. San Luis Ambulance Service, Inc.* (C.D.Cal. Jan. 13, 2015, No. CV 13-07480 BRO (SSx)) 2015 WL 12672090, at p. *11 (*Javine*) ["Plaintiff's claims are not typical of the claims of the putative classes because she has not signed a liability release agreement. In order to prevail on their claims, the majority of the putative class members who *have* signed a release agreement would have to prove either that the agreement is invalid or that it does not cover the claims at issue here, both of which are issues that Plaintiff lacks standing to raise"]; *Wetzel v. CertainTeed Corp.* (W.D.Wash. Mar. 25, 2019, No. C16-1160JLR)

8

2019 WL 3976204, at p. *13 (*Wetzel*) [typicality requirement not met by plaintiff who had not signed release because "numerous homeowners in the proposed class have signed CertainTeed's release"]; *Bond v. Marriott Int'l, Inc.* (D.Md. 2014) 296 F.R.D. 403, 408-409 ["Plaintiff Bond is not typical because he did not execute a release and a number of other member of the class, including Plaintiff Steigman, did"]; *Carlstrom v. DecisionOne Corp.* (D.Mont. 2003) 217 F.R.D. 514, 516 ["Here, some 98 percent of the proposed class members signed a release in exchange for separation pay. Carlstrom did not. Carlstrom's position is plainly not comparable to the vast majority of proposed class members who signed releases and received payment. Typicality is missing"]; *Bublitz v. E.I. du Pont de Nemours & Co.* (S.D.Iowa 2001) 202 F.R.D. 251, 257 ["Courts have been very reluctant to let class members who have executed waivers or releases to be represented by someone who had not executed the same"].)

Courts have recognized the serious conflicts that a named plaintiff who has not signed a release will have with putative class members who have. The latter will need to show that the release is invalid or does not cover class claims. (*Wetzel, supra*, 2019 WL 3976204, at p. *13; *Javine, supra*, 2015 WL 12672090, at p. *11.) But putative class members may not wish to have their releases invalidated, which would require them to return the compensation received. (*Wetzel, supra*, at p. *14; *Stafford v. Brink's, Inc.* (C.D.Cal. Dec. 1, 2015, No. CV-14-01352-MWF (PLAx)) 2015 WL 12699458, at p. *14.) A named plaintiff who has not signed a release may have little incentive to demonstrate that the release is ineffective. (*Stafford, supra*, at p. *13.) And fundamentally, there are serious concerns whether a named plaintiff like Sams has standing to challenge the releases at all. (*Melong, supra*, 643 F.2d at p. 13; *Wetzel, supra*, at p. *14; *Javine, supra*, at p. *10.)

Cases Sams cites coming to the opposite conclusion are in the minority. (See, e.g., *Nitsch v. Dreamworks Animation SKG Inc.* (N.D.Cal. 2016) 315 F.R.D. 270, 284 [" 'defenses that may bar recovery for some members of the putative class, but that are

9

not applicable to the class representative do not render a class representative atypical' "];
*Herrera v. LCS Fin. Servs. Corp.* (N.D.Cal. 2011) 274 F.R.D. 666, 681 ["The fact that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification"].)

These cases ignore or minimize the conflicts outlined above between class representatives who have not signed releases and the individuals who have. Moreover, in *Korn v. Franchard Corp.* (2d Cir. 1972) 456 F.2d. 1206, cited by Sams, the Second Circuit implied that, if the releases were valid, typicality would not exist. (*Id.* at p. 1212 ["[Plaintiff's] demands and her position are not atypical of the unreleased investors', or until the releases are sustained of the released investors' as well"].)

Sams contends that the trial court improperly considered the merits of Sorenson's affirmative defense based on the releases, effectively deeming the releases valid. Sams relies on *Hendershot* where the appellate court held that the trial court erred in ruling the class was not sufficiently numerous by excluding putative class members who signed releases. (*Hendershot, supra*, 228 Cal.App.4th at p. 1222.) *Hendershot* observed that the trial court "essentially ruled that defendant's affirmative defenses based on the releases and arbitration agreements had merit, and thereby determined that the majority of putative class members could not assert claims against defendant in this action." (*Id.* at p. 1223.)

Here, the trial court specifically stated, "I understand that the settlement and release does not affect numerosity." When defense counsel offered that the number of putative class members who did not sign releases might be "less than ten," the court responded, "[t]he class could exist, it's just -- there would be a strong affirmative defense as to all but ten." Further, the court stated that it did not look at any of the releases, and therefore had no basis on which to make a determination that they were valid. Finally, the court's comment that "[i]t would be rare, if not impossible" for a class member who signed a release to pursue class claims does not constitute a determination that the

10

releases were valid. The court simply reflected on a significant obstacle for these individuals that Sams did not face: "The first thing they'd have to do is set aside the settlement and release before they could even start towards a class action."

On this record, we do not find that the trial court abused its discretion in determining that the typicality requirement for class certification was not met.

*Adequacy*

The trial court's second ground for denial of certification was "that there are credibility problems sufficient enough to reject the adequacy of Plaintiff acting as class representative." The court did not elucidate the nature of Sams' credibility problems and there was no further discussion of this ground at the hearing. However, Sams acknowledges that the court was referring to his criminal convictions. But Sams argues that his criminal history was insufficient to disqualify him on adequacy grounds, because the "two criminal convictions" were "distant in time, . . . not related to the claims in this case, and do not bear on his honesty regarding the claims in this case." We conclude the trial court did not abuse its discretion in finding that Sams was not an adequate class representative.

"Credibility problems can be an appropriate ground to reject the adequacy of class representative. [Citation.]" (*Payton, supra*, 27 Cal.App.5th at p. 846, citing *Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1308 (*Jaimez*).) In *Payton* and *Jaimez*, the courts held that proposed class representatives who failed to disclose prior criminal convictions on employment applications were inadequate because their credibility was in question. (*Payton, supra*, at p. 846; *Jaimez, supra*, at pp. 1307-1308.)

Sams emphasizes that he "candidly" admitted his convictions. However, in deposition, he could not provide details of his arrest in 2010 and stated incorrectly that he served six months on the charge. Further, his explanation of his conviction for receiving stolen property was vague at best. In fact, the details of this arrest in 2010 and his convictions in 1999 and 2011 did not emerge until Sams' reply declaration after Sorenson

11

had raised the issue in opposition to the motion for class certification. In that declaration, Sams' description of circumstances attempted to cast him in a favorable light, i.e., as a jealous ex-husband on the false imprisonment conviction in 1999 and an unwitting recipient of stolen property on the 2011 conviction. As for the 2010 arrest for assault with a deadly weapon, Sams not only recalled new and different details about that charge, but he described circumstances—i.e., defending a victim of domestic violence—in which his action was salutary and the result exoneration. Thus, Sams offered an explanation of his criminal arrests and convictions, which itself could become "the focus of a credibility battle." (*Payton, supra*, 27 Cal.App.5th at p. 846.)

Moreover, contrary to Sams' argument, his felony conviction for receiving stolen property did involve dishonesty and could be offered to impeach his credibility. It is established that "receiving stolen property necessarily involve[s] moral turpitude." (*People v. Turner* (1990) 50 Cal.3d 668, 705, citing *People v. Rodriguez* (1986) 177 Cal.App.3d 174.) This is because "a necessary element of the offense of receiving stolen property is actual knowledge of the stolen character of the property." (*Rodriguez, supra*, at p. 179; see also *People v. Gray* (2007) 158 Cal.App.4th 635, 641.) In his declaration, Sams asserted that he did not know the generator was stolen, yet he pled guilty to the charge.

Conviction of a crime of moral turpitude is relevant to honesty. (*People v. Castro* (1985) 38 Cal.3d 301, 315.) A party may be impeached by evidence of a prior conviction of receiving stolen property, which is relevant to honesty and credibility. (See *People v. Kyllingstad* (1978) 85 Cal.App.3d 562, 569 [receiving stolen property "being a larcenous crime, clearly bore upon defendant's character traits of honesty and veracity"]; *People v. Lassell* (1980) 108 Cal.App.3d 720, 724 [receiving stolen property is "probative on the issue of credibility"]; *People v. Hoze* (1987) 195 Cal.App.3d 949, 955 [accord].)

Thus, Sams' conviction for receiving stolen property could detract from his credibility. (*Payton, supra*, 27 Cal.App.5th at p. 846.) And contrary to his argument that

this conviction was "remote in time," "even though old, [it] would be admissible for impeachment purposes at the discretion of the trial court." (*Id.* at pp. 846-847, citing Evid. Code, § 788.)

We conclude that it was proper exercise of discretion for the trial court to conclude that the interests of the class would not be served by a representative with criminal convictions.

*Amendment*

We conclude the trial court erred in denying Sams a reasonable opportunity to amend the complaint. The court rejected—essentially without explanation—Sams' request for leave to amend the complaint to add a class representative who had signed a release.

The lack of an adequate or typical class representative alone does not justify the denial of a class certification motion. California has a procedure to protect class claims where the trial court denies certification on the ground that the named plaintiff is not adequate or typical of the class. (*Fierro v. Landry's Restaurant Inc.* (2019) 32 Cal.App.5th 276, 294, fn. 22 (*Fierro*).) If "the court concludes that the named plaintiffs can no longer suitably represent the class, it should at least afford plaintiffs the opportunity to amend their complaint, to redefine the class, or add new individual plaintiffs, or both, in order to establish a suitable representative." (*La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 872; *Fierro, supra*, at p. 294, fn. 22; see also *Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986, 999 ["The lack of an adequate class representative, however, does not justify the denial of the class certification motion. Instead, the trial court must allow Plaintiffs an opportunity to amend their complaint to name a suitable class representative"]; *Jaimez, supra*, 181 Cal.App.4th at p. 1308 [same].)

"This amendment procedure ' "prevents a prospective defendant from avoiding a class action by 'picking off' prospective class action plaintiffs one by one, settling each

13

individual claim in an attempt to disqualify the named plaintiff as a class representative." ' " (*Fierro, supra*, 32 Cal.App.5th at p. 294, fn. 22, quoting *Payton, supra*, 27 Cal.App.5th at p. 848; see also *Timlick v. National Enterprise Systems, Inc.* (2019) 35 Cal.App.5th 674, 689-690.) To be sure, this is not a "picking off" case where the class action defendant seeks to disqualify the named plaintiff by entering into a settlement with him or her. Here, Sorenson obtained releases for small amounts from putative class members and opposed certification on the ground that Sams' claims were now atypical of these individuals. However, the effect is the same. Sorenson used release agreements as a tactic to challenge the named plaintiff and prevent certification of a class action. (See *Timlick, supra*, at p. 689.) The amendment procedure counters that tactic.

Sorenson argues that "issue of amending to seek a new class representative was not properly preserved because the Order is silent as to amendment, and Sams made no specific objection at oral argument to preserve record." Not so. At the hearing on the motion for class certification, counsel for Sams requested a reasonable opportunity to amend the complaint, the trial court clarified with counsel that the amendment would be to add a new class representative, and the court did not grant the request when it adopted the tentative ruling, which was silent on the issue. An oral request to amend a complaint made at a hearing on a motion for class certification is sufficient to preserve for appellate review the issue of whether the court abused its discretion in denying the request. (Cf. *Payton, supra*, 27 Cal.App.5th at p. 849.) Sams requested an opportunity to amend the complaint in its reply brief, as well.

Sorenson acknowledges that leave to amend is liberally granted but contends that "denying a request to amend a complaint may be appropriate when an unreasonable delay in seeking amendment prejudices defendant." (See *Payton, supra*, 27 Cal.App.5th at p. 849; *Jaimez, supra*, 181 Cal.App.4th at pp. 1308.) In *Payton*, the court concluded the trial court did not abuse its discretion in denying the plaintiff's request to add or

14

substitute a new class representative. (*Payton, supra*, at p. 849.) The request was made after the court denied the plaintiff's motion for class certification nearly four years after the case was filed. (*Id*. at p. 847.) Here, Sams filed a motion for certification just over 13 months after the action was filed and the trial court heard the motion one month later. (*Jaimez, supra*, at pp. 1290-1291, 1297 [court should have granted motion to amend to add new class representatives made just over one year after action was filed].) We find the timing of Sams' motion more comparable to that in *Jaimez* than in *Payton*. Moreover, Sorenson also has not identified any prejudice incurred in connection with an amendment to add a new class representative.

We conclude that the trial court abused its discretion in failing to give Sams a reasonable opportunity to amend the complaint.

### DISPOSITION

The case is remanded to the trial court with directions to allow Sams a reasonable opportunity to amend the complaint to name new class representatives, to define new subclasses, or both. The order denying class certification is otherwise affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

/s/
RAYE, P. J.

We concur:

/s/
BLEASE, J.

/s/
DUARTE, J.